McMILLION v. PIGG & MARR.

In a bill to obtain relief against a judgment at law, A, charged that he had bought of B. a slave, paid part and gave his note for the remainder of the purchase money; that B. had warranted the slave to be sound; that the slave was unsound and of no value; and he believed B. knew it; that B. resided out of the State, so that he could not tender the slave back to him; that B. had assigned the note to C. who had obtained judgment on it at law.   Held, that Chancery had no jurisdiction to injoin the judgment.

IN December, 1828, J. McMillion filed a bill in the Circuit Court of Tuscaloosa county, sitting in Chancery, against C. Pigg and W. M. Marr, praying an injunction and relief against a judgment at law, which had been rendered against him in the County Court of that county, in favor of Marr.   In his bill he charged, that in March, 1827, he purchased a slave of Pigg; that he paid him $150 in hand, and gave him his note for $200, payable the 1st of January next thereafter; that at the time, Pigg executed a bill of sale of the slave, with a warranty of soundness and health, which bill of sale is lost or mislaid; that the slave at the time of the purchase, and ever since, has been unsound in both his legs and other parts of his body, so that he has not been able to render service sufficient to pay for his maintenance; that he had not seen Pigg since the purchase, and therefore could not return or offer to return him the slave, and that he is informed and believes he lives in Tennessee; that Pigg had transferred the note to Marr, who lives in this State; that he believes Pigg knew of the unsoundness at the time of the sale, and assigned the note, knowing the consideration not to be good; that Marr had brought suit on the note and recovered judgment at law, &c.   On this bill, an injunction was granted, and at the return term, Marr moved to

JULY 1830.

McMillion
v.
Pigg & Marr.

dissolve the injunction and dismiss the bill, for want of equity. The Circuit Court sustained this motion, the bill was dismissed, and the complainant sued his writ of error to this court.

CRABB, for the appellant. McMillion was entitled to an action on the warranty made by Pigg, and had he returned the slave upon his discovering the unsoundness, he could have defended himself in an action on the note.[a] But it being impossible, as shewn in the bill, for McMillion to return the slave, owing to Pigg's residence being unknown, and the former for the same reason not having an opportunity to sue the latter upon his warranty, the bill of sale being lost, and it being the fact, that Pigg knew of the unsoundness at the time of sale, and for that reason transferred the note to Marr, all taken in connexion, make out a clear case for resort to equity.

a Comyn on Con. 127. 7 Chit. on Con. 137. Note. 12 Wheat. 193.

McMillion could not have defended himself in the suit at law, because he had not returned or offered to return the slave on discovering his unsoundness; he could not have had a remedy, or at all events, an adequate remedy at law upon the warranty, because Pigg was gone, his residence unknown, and the bill of sale containing the warranty, was lost. If therefore, Chancery will not afford her aid in a case like the present, then indeed is it too true, that divine justice cannot always compass her ends, and that subtle man will be permitted once more, as he has too often done in time past, to effect his fraudulent purposes, in despite of the boasted perfection of legal reason and the sound discretion of Chancery power.

BARTON & STEWART, argued for the appellees.

By JUDGE SAFFOLD. The subject of controversy charged in the complainants bill, involves in some degree, a question of vast importance and difficulty; one on which there has been both in the United States and England, perhaps more contrariety of decision, than on any of such frequent recurrence. It would appear to be a matter of equal surprise and regret, that a question so essential to the rights of individuals, should not long since, have been settled by some uniform rule of judicial decision, or legislative enactment. The question alluded to is, under what circumstances, and in what manner can a successful defence be made at law, to an action brought to recover the

price of an article sold, in which sale there has been a total or partial failure of consideration, arising from deceit, or breach of warranty; and where the defence at law has failed, or has not been attempted, under what circumstances, relief in Chancery can be had against the judgment?

Would it not have been an available defence at law, that the property was unsound to a degree which entirely destroyed its value; that the bill of sale expressed a warranty of the soundness and health of the slave; and that Pigg, the vendor, knew of the unsoundness at the time of the sale, and that he was a non-resident, so that the complainant could not return, or offer to return the property? If these facts were susceptible of proof at law, and would have constituted a legal defence to the action, there could have been no necessity, consequently there was no authority for resorting to Chancery for relief. It is not urged either in the bill, or argument, that there was an absence of proof, either as respects the warranty, arising from the loss of the bill of sale, or in relation to any other material fact. If it was, the only legal answer would be, that no sufficient cause is shewn why the discovery in Chancery was not sought, pending the suit at law.

The complainant rests his claim to relief in Chancery on the ground, that he is entitled to an action and damages on the warranty against Pigg; and in as much as he is a non-resident, and his abode not precisely known, Chancery will so far protect the citizens of the State, as to entertain jurisdiction, and administer to the complainant, here, the justice which is due him, and which otherwise he could only obtain by pursuing the vendor into another sovereignty; that had he returned the slave on discovering the unsoundness, he could have made a successful defence at law, against the suit on the note; but that it was impossible to return the property, or to make the offer, owing to Pigg's unknown residence; and that the fact of the note having been assigned does not affect his right to the relief sought, as our statute entitles the maker of a note to the benefit of any defence against the assignee, previous to notice of the assignment, which would have been available against the payee; and that his failure to return the property, under the circumstances, as it deprived him of his defence at law, instead of weakening, strengthens his claims to relief in Chancery.

The doctrine maintained in the case of *Thornton v. Wynn*,[a] referred to in support of the foregoing positions,

JULY 1830.

McMillion
v
Pigg & Marr.

a 12 Wheat. 183.

JULY 1830.

McMillion
v
Pigg & Marr.

*a* page 640 to 648.

seems to be, "that if upon a sale with warranty, or if by the special terms of the contract, the vendor is at liberty to return the article sold, an offer to return it is equivalent to an offer accepted by the vendor, and in that case the contract is rescinded, and at an end, which is a sufficient defence to an action brought by the vendor for the purchase money, or to enable the vendee to maintain an action for money had and received in case the purchase money has been paid;" and further, "that if the sale be absolute, and there be no subsequent agreement or consent of the vendor to take back the article, the contract remains open, and the vendee is put to his action on the warranty, unless it be proved that the vendor knew of the unsoundness of the article, and the vendee tendered a return of it in a reasonable time."

In this case, as reported in Wheaton, the Supreme Court reviewed many of the early English decisions, and appears to have adopted the most rigid rule against relief by way of defence to the action at law. That examination however, as well as a variety of cases referred to in 2 Starkie's Evidence, *a* fully establishes the position, that great diversity of opinion has existed on the subject, both in England and the United States, and that the latest cases in both countries, have extended the field of defence at law, whether on the ground of breach of warranty or deceit, and especially for both united, as is here charged; also that in many cases, Courts of high authority have sustained the defence at law, on the ground of a partial, as well as total failure of consideration.

But viewing this case in its most favorable light, according to the principles of any acknowledged rule of practice, insuperable barriers arise against the Chancery relief as here sought. The note has been assigned to Marr, who is to be regarded as a *bona fide* holder, free from any participation in the warranty or fraud, and without notice of any contemplated defence. Nothing of the kind is alleged in the bill. The complainant made no resistance on the ground of a failure of consideration, previous to, or pending the suit at law. He has not returned or attempted to return the slave to the vendor; and though he states that the residence of the latter was not certainly known, he does not appear to have endeavored to ascertain it; or to have claimed the benefit of a defence at law on the ground that it was impracticable to return the property; that this would have been a sufficient excuse for failing to return it, none of the authorities deny.

JULY 1830.

McMillion
v.
Pigg & Marr.

Notwithstanding the statute relied on, entitles the maker of a note, in an action by the assignee, to the benefit of any payment, set off, or discount made, had or possessed against the note at any time previous to notice of the transfer, this is a right *stricti juris*, and which must often operate unjustly to the assignee; so that if the right be not claimed at law, in the manner, and at the time prescribed, subsequently when the relief is sought in Chancery, the circumstances of delay and injustice to others, cannot be disregarded.

An unanswerable objection to the relief sought is, that according to the case presented by the bill, the complainant could have made successful defence at law; and for aught that appears, can yet have adequate redress by action on the warranty against Pigg.

It is not alleged, even if such circumstances could vary the case, that Pigg has changed his residence since the sale; that it is impossible or impracticable to ascertain where he is, or that any efforts of the kind have been used. Justice to the indorsee as well as the soundest principles of law and equity, required of the complainant, that he should confine himself to his legal remedy, and elect pending the suit at law, to make defence against it, or resort to his cross action. The facts being fully susceptible of proof, the measure of relief, at least in case of a total failure of consideration, is the same in law and equity.

It may be also remarked that we do not conceive the correct and most recent doctrine in relation to failure of consideration, to have been fully explained in the case of *Thornton v. Wynn*, previously referred to. In the case of *Beecker v. Vrooman*[a] which was an action for the price of a chattel, the defendant pleaded the general with notice of the special matter to be given in evidence, and proved a fraudulent misrepresentation by the vendor, respecting the quality of the article. The Court ruled that the defendant, by proving a deceit in the sale, and that the chattel was of no value, might defeat the plaintiff's action, or if the unsoundness produced only a partial diminution of the value, he might shew that part in mitigation of damages. This decision referred for authority to the cases, *Basten v. Butler,*[b] *Lewis v. Casgrave,*[c] *Fisher v. Samuda and another,*[d] *Runyan v. Nicholls.*[e]

Also in the case of *Sill v. Rood*[f] which presented a similar question, it was decided that a promissory note given on the sale of the chattel, fraudulently represented by the

[a] 13 John. R.
[b] 7 East. 480.
[c] 2 Taunt. 2.
[d] 1 Camp. N. P. 190.
[e] 11 John. R. 548.
[f] 15 John. R. 230.

22

seller to be of great value, when in fact it was of no value, is without consideration and void, and that no special plea, or notice under the general issue, was necessary in order to let in such defence. Neither in this case, nor that of *Beecker v. Vrooman*, was any offer to return the article attempted to be proved.

In *Grant v. Button*,[a] it was decided, that in an action for work and labor, on a contract for an agreed price, the defendant, to reduce the amount of the plaintiff's claim, may shew that the work was not done faithfully, and in a workman like manner. And the Court took no notice of the distinction, which has in some cases prevailed, between an action for a specific sum agreed on, and where the plaintiff proceeds on a *quantum meruit.*

The case of *Miller v. Smith*[b] was assumpsit for goods sold and delivered. The recovery sought was an agreed price for tobacco, sold and delivered to the defendant. Defence was made under the general issue, that the article was expressly represented to be of a different and far superior quality to what it in fact was. Story, J, in delivering his decision, remarked, that "where goods are sold as of a certain quality, the defendant may, in an action for goods, sold and delivered, give the facts in evidence to reduce the damages; for the plaintiff is entitled to recover no more than the real value of his goods. The authorities directly support this doctrine, and there is neither reason nor justice in straining after technical objections to overthrow it." This case was treated as one involving a breach of warranty.

In the case of *Farnsworth v. Garrard*[c] it was held that where the plaintiff declares on a *quantum meruit*, for work and labour done, and materials found, the defendant may reduce the damages, by shewing that the work was improperly done, or may entitle himself to a verdict by shewing that it was wholly inadequate to answer the purposes for which it was undertaken to be performed, and in the case of *Fisher v. Samuda and others*,[d] the doctrine is maintained that where an action has been brought for the value of goods furnished at a stipulated price, and the purchaser does not, either in bar of the action, or to reduce the damages, object to the quality of the goods, but allows the seller to recover a verdict for the full price agreed upon, he cannot afterwards maintain a cross action on the ground of the goods being of a bad quality, and unfit for the purpose for which they were ordered. In that case

there seems to have been a general undertaking, or warranty, that the article should be of a better quality than it proved.    It was held by Lord Ellenborough, before whom the trial was had, that the purchaser was precluded from objecting to the quality of the article, which was beer, after having kept it a considerable time; that it was his duty immediately upon discovering that it was not according to order, and unfit for the purpose for which it was intended, to return it to the vendor, or to give him notice to take it back.    The general doctrine however, seems to be, that where there has been an express warranty, an action may be maintained upon it, without either returning the goods, or giving the seller notice to take them back.[a]    But if the express warranty be complied with, and there be an undertaking to take the article sold again, and pay back the money if on trial it shall be found to have any of the defects mentioned in the warranty, the buyer must in such case, return the article as soon as he discovers any of these defects, or in a reasonable time, in order to maintain an action on the warranty,[b] and even where there has been an express and absolute warranty, the purchaser must return the article warranted, to the seller, and thereby rescind the contract of sale, before he can maintain an action for money, had and received, to recover back the price.  See *Power v. Willis*,[c]   *Weston v. Downs*,[d]  *Towers v. Barrett*.[e]

I have deemed it proper thus far, to review the authorities on the vexed question of defence, for a failure of the consideration of contracts, as the argument embraced much of the doctrine, and the nature of the question requires the earliest decision.    But as some of the Judges are not fully satisfied respecting the extent to which the doctrine of defence, on ground of a partial failure of consideration, should be sustained, and this case does not particularly demand the decision, the Court will not be understood to express any decisive opinion upon it.    But it is believed to have been sufficiently shown that the complainant is remediless in the present suit, and that the decree of the Circuit Court must be affirmed.

                          Decree affirmed.


LIPSCOMB, CHIEF JUSTICE, not sitting.

