## MOREHEAD *versus* GAYLE.

1. In an action on a promissory note, brought by the assignee thereof, which note was given for the price of a slave, purchased on an absolute warranty of soundness—held, that evidence of the unsoundness of the slave, at the time of the sale, (amounting to an entire failure of consideration,) was sufficient to entitle the defendant to a verdict, without proof that the vendor knew of the unsoundness; and without proof of an offer to return the slave—it appearing that the slave died so soon after the sale, as to render a return impracticable.

This was assumpsit, in Greene Circuit court, to recover the amount of a promissory note: and was brought by the plaintiff in error, as endorsee of one Shackleford. The note had been given for the price of a slave, who died eight days after the sale.—Shackleford, in consideration of the note, executed to the defendant a bill of sale, with warranty; and the present action was defended on the ground of the unsoundness of the slave, at the time of the sale. It was in proof, that the slave was placed on the plantation of the defendant; and that the latter was out of the county, until after the slave died: but no evidence was offered to show an offer on the part of the defendant, to return the slave to the vendor.

In relation to these facts, the court, as appeared by the bill of exceptions, charged the jury, that as the vendor had executed a bill of sale with an absolute warranty of soundness, it was not necessary for the defendant, (to entitle him to a verdict,) to prove that the vendor knew of the unsoundness of the slave, at the time of the sale: but that it was sufficient to to prove that the slave was unsound at that time.—Also, that the defendant was bound to offer to return the slave within a reasonable time after the unsound-

ness had been ascertained; but that if the death of the slave ensued in so short a time after the sale, as to give no opportunity to the defendant to do so, he was to be excused, for the failure.

A verdict being had for the defendant, the above charge was relied on, in error.

*Erwin,* for Plaintiff—*Stewart, contra.*

SAFFOLD, J.—The action was assumpsit on a promissory note, given by the defendant in error, who was also defendant below, for the price of a negro slave, sold to him by one R. D. Shackleford, who subsequently transferred the note, by endorsement, to the plaintiff.

Issue was joined between the parties, on the pleas of non-assumpsit, want of, and failure of con sideration; and fraud.

A bill of exceptions shews, that the vendor, at the time of the sale, executed a bill of sale, containing an absolute warranty of the soundness of the slave; that on the second day after the sale, the overseer of the defendant, having the care of the slave, "was told that the said slave, from his appearance at that time, was unsound, and a cheat;" that in eight days after the sale the slave died. It is, also, in like manner shewn, that Shackleford lived, at the time, seven or eight miles from the defendant's plantation, where the slave was kept after the sale, until his death; that the latter lived four or five miles off; "and that two or three days after the sale, he left home and went to Tuskaloosa, and did not return home until after the death of the slave;" and the slave continued to work on the defendant's plantation, from the sale till his

death. There was no evidence of an offer on the part of the defendant to return the slave to Shackleford, nor any notice given to him of the unsoundness.

Upon this state of facts, the court charged the jury, that as Shackleford had executed a bill of sale, containing an absolute warranty of soundness, it was not necessary to prove his knowledge of the unsoundness to entitle the defendant to a verdict; but that it was sufficient to authorise them to find a verdict in favor of the defendant, for him to prove that, in point of fact, the slave was unsound at the time of the sale, and warranty, though Shackleford was not apprised of the fact.

The court further charged, however, that the defendant was bound to offer to return the negro within a reasonable time, after his unsoundness had been ascertained; but, that if he died in so short a time after the sale, as to give no opportunity to ascertain whether he was materially diseased, then the defendant would be excused from offering to return the negro: also, that if the jury believed there was fraud in the sale, it made the defence so much the stronger. Besides, the facts in proof, as above stated, there was circumstantial evidence of fraud.

The assignment of error, relating to the sufficiency of the jury, and of the issue, is conceived to be so fully embraced and determined, by the principles of several former decisions of this court, as to require no farther examination.

A more material assignment is, that the court erred in the instructions given to the jury, as above stated.

The question here presented, is not entirely *res integra* in this court. Several cases, involving ques-

tions of failure of consideration, under different aspects, have previously occurred, and been decided; yet the subject is complex, and the questions arising out of it multifarious; so that this case is slightly distinguishable from any we have previously adjudicated. The case depends, mainly, on questions relating to the necessity of rescinding contracts for breach of warranty, or fraud, by offering to return the article, or giving notice of the unsoundness; and on the distinction that should be observed between the vendee's right of relief, when sought by a cross action, or by way of defence to a suit for the consideration money.

The first clause of the instructions to the jury, if taken in the abstract, and according to its literal import, would appear erroneous; it would admit of the construction, that, as there was an absolute warranty of soundness, proof of the contrary, though the fact of unsoundness was unknown to the vendor, and the failure of consideration was but partial, would entirely discharge the vendee from liability for the purchase money; and this without any offer to return the property, or excuse for failing to do so. But viewing the clause of the instructions, in connection with the entire charge, and the proofs stated in the bill of exceptions, it exhibits a different aspect.

It is clearly shewn, that the slave died within eight days after the sale—that the vendee lived four or five miles from his plantation where the slave was during the time, and that within two or three days of the sale, said vendee left home, and did not return to the county until after the death of the slave; it does not appear that the defendant (the vendee) had any knowledge or information of the unsoundness of the slave,

until after his death.    It is true, the bill of excep-
tions states, that on the second day after the sale, the
defendant's overseer, in whose care the slave had been
placed, was told that the slave, *from his appearance
at that time,* was unsound and a cheat; this language,
however, admits of no other interpretation, than that
it was the mere speculation, conjecture, or opinion,
of some one, judging alone from the then appearance
of the slave, as the vendee, overseer, or any other
person, professing no knowledge of the fact, could
have done : even this conjecture does not appear to
have been made known to the defendant ; it is there-
fore entitled to no influence in the case.

Had the failure of consideration been but partial,
and the instructions been given with reference to
such state of facts, they would have been erroneous,
for the reason, at least, that though the defendant
may have been entitled to a discount, or diminution
of the price agreed, yet the plaintiff would have been
entitled to a verdict in proportion to the true value of
the contract, the same not having been rescinded.
But, from the evidence of the death of the slave in
so short a time after the sale—from the fact that no
question was raised respecting partial failure of con-
sideration, and from the circumstance of the jury hav-
ing, in effect, found the property unsound at the time
of the sale, the position may be safely assumed, that
on the trial, the case was viewed and treated, both by
the court and counsel, as one involving a total fail-
ure of consideration.    It is equally evident, that the
only questions materially contested below, and in-
tended to be reserved, were, whether to entitle the
defendant to the benefit of the defence relied on, it
was necessary for him to prove the vendor's know-

ledge of the unsoundness of the property — a rescision
of the contract by offering to return it, or a reasona-
ble excuse for not having done so.   Hence the in-
instruction was given, as mentioned in the first clause
of the charge ; and the farther direction that the de-
fendant was bound to offer to return the negro within
a reasonable time after his unsoundness had been as-
certained ; but that if he died in so short a time af-
ter the sale, as to give no opportunity to ascertain
whether he was materially diseased, then the defend-
ant would be excused from offering to return; and that
if the jury believed there was fraud in the sale, it
made the defence so much the stronger.

Whether the defendant had sufficient knowledge
of the unsoundness of the slave, and a reasonable
time, under the circumstances, within which to have
offered a return, was a question fairly and properly
submitted to the jury, and which they have determined
in the negative.   So far as the question of fraud was
involved, they have also decided, as they clearly had
a right to do.   Therefore, no error can have arisen,
unless it was in the instruction to the jury, which in
substance was, that though the propery may not
have been returned, or the return offered, yet of the
defendant had no reasonable opportunity of doing so,
in consequence of the early death of the slave, this
circumstance would excuse him, and his defence
should prevail.   To establish error on this point, has
been the chief stress of the plaintiff's argument, and
in which he relies mainly on the case of *Thornton* v.
*Winn.*[a]   The doctrine there declared is, that " if [12 Wheat. 183.]
upon a sale with a warranty, or if by the special terms
of the contract, the vendee is at liberty to return the

article sold, an offer to return is equivalent to an offer accepted by the vendor, and in that case the contract is rescinded and at an end, which is a sufficient defence to an action brought by the vendor for the purchase money; or to enable the vendee to maintain an action for money had and received, in case the purchase money has been paid." That court recognizes the same remedy where the sale is absolute, and the vendor afterwards consents, unconditionally, to take back the property. But they say, " if the sale be absolute, and there be no subsequent agreement or consent of the vendor to take back the article, the contract remains open, and the vendee is put to his action on the warranty," unless there was fraud, and an offer to return within a reasonable time. The rule of practice thus adopted at Washington, is as previously remarked by this court, (*McMillion* vs. *Pigg & Marr,*[a]) the most rigid that has any where prevailed against relief by way of defence to the action at law ; nor is it clearly and satisfactorily defined.— It was doubtless adopted as a part of the system which has been exploded in this state, and many of the other states of the union, as well as in several of the English courts, that a partial failure of consideration is not a defence to an action at law, brought to recover the price of an article sold ; but that in such cases, the vendee must resort to his cross action ; which remedy on account of its dilatory nature, and circuitous form, is by this court, and many others of high authority, deemed inconsistent with justice, and the more correct rules of modern practice.

The plaintiff's counsel also relies on the case of *Burton* vs. *Stewart,*[b] in support of his position, that this defence can not prevail, because there was no

[a] 3 Stewart 165.

[b] 3 Wendel, 236.

rescision of the contract, by an offer to return the article. No other case decided in New-York, is believed more favorable to his argument than this. It involved an alleged *deceit* in the sale of a mare, where there had been no offer to return the property, or excuse for the failure. There, the court expounded the law to be, that *fraud*, in the sale of a chattel, can not be set up in bar of a recovery of a note given on such sale, unless the vendee on the discovery of the fraud, returns the article purchased to the vendor, or shews it to be entirely destitute of value.

The case at bar is distinguishable from both the cases here cited, in the essential features, that in neither of them did the animal, which was the subjects of contracts die in so short a time as to deprive the vendee of the power to return it, and to afford conclusive evidence of the total failure of the consideration. In the case of *Burton* vs. *Stewart*, the mare in question appears to have died of the disease which was alleged as the ground of fraud; but, from the facts stated, it is probable the death did not occur, until after the lapse of all reasonable time, within which the offer to return should have been made. In that case, however, the court recognised the right of the defendant to have avoided the contract, in either of two different modes, according to the facts: they were, either to have returned the animal to the vendor, as soon as the fraud was discovered; or, if the fact was so, to have proven her to be of no value.— That court further remarked—"It seems to be well settled, that if the action had been brought for the consideration of the horse, the defendant might have shewn, in mitigation of damages, if they had given notice thereof, that the horse was not such as the

plaintiff had represented; and that the representation was fraudulent. There are cases which shew, that where the action is on the security, the rule is diferent, but this court seeing, no reason for the distinction, have not regarded it." That court adds— "It has been decided here, that the partial failure of the consideration of a note may be given in evidence in a suit on the note between the parties to it, under a notice to reduce the amount of damages."[a]

[a]2 Wendell, 431.

The doctrine of the case in New York, appears to sustain the defence here insisted on, if the remedy, by way of defence to the action be, as ruled by this court, in the case of *Peden* vs. *Moore*,[b] the same, for a breach of warranty merely, that it is in case of fraud; and, I think, most, or all the reasons, which recommend the direct and speedy remedy in the one case, apply equally in the other. The rule in New York, that the fact, that the article sold is of no value, excuses the failure to return it, is sufficient *to* sustain this defence; if it be true, as we think is sufficiently evident, that the court and jury, in this case, treated the consideration as a total failure. It is also conceived inconsistent with common justice and legal analogy, that the omission to return the property to the vendor, should destroy the right of defence, when the failure is excused by proof of circumstances, shewing that it was impossible or impracticable to return it, especially if the cause be its sudden death or decay, as appears here to have been the case.

[b]1 Stew. & Porter 71.

It is true that the principle has often prevailed, and is yet recognised, with increased qualifications, that to authorise a vendee to rescind the contract, and successfully resist an action for the purchase money, there must appear to have been fraud in the

contract, and an offer to return the article, within a reasonable time : provided there has been no warranty, or special agreement for the return of the property. But if there has been such agreement or warranty, then an offer to return, is equivalent to an offer accepted by the vendor; and, in that case, the contract is rescinded, and at an end; which is a sufficient defence to an action brought by the vendor, for the purchase money; or to enable the vendee to maintain an action for money had and received, in case the purchase money has been paid.

This is the doctrine of cases strongly opposed to the remedy, by way of defence to an action at law, on the security for the purchase money; and, among others, the cases of *Thornton* vs. *Winn*, and *Burton* vs. *Stewart*, to which reference has been made, and on which the plaintiff's counsel mainly relies. The former, however, recognises, (as we have seen) the right of rescission, in case of breach of warranty, whether fraudulent or not, by an offer to return the property within a reasonable time. If then, the degree of unsoundness has been so great, and the evidence of it, so conclusive, that a reasonable time was not afforded the vendee, to return the property, it is highly improbable that the failure can prejudice the vendor, and it is equally unjust and unreasonable, that it should deny to the vendee his right of defence to the action for the purchase money. Nor is there any thing expressed in that case, directly inconsistent with the principle of the latter (*Burton* vs. *Stewart*,) that proof of the article being *valueless*, excuses the failure to return it.

But if this question was entirely new in this court, and there were not respectable authorities, more fa-

vorable to the defence insisted on, than such as I have referred to, we might find more difficulty in the case, and, perhaps be drawn to a different conclusion. In the case already alluded to, of *Peden* vs. *Moore,*[a] the opinion of this court was declared, that there was "no sufficient reason for permitting the defence to be set up, where there is fraud in the transaction, and denying it where there is a false warranty, unaccompanied by a fraud."

In the case of *Beecker* vs. *Vrooman,*[b] the principle was explicitly recognised, that in an action for the price of a chattel, the defendant may prove a deceit in the sale, and that the chattel was of no value, and thus defeat the plaintiff's action; or, if the unsoundness produce merely a partial diminution of the value, he may shew that part in mitigation of damages. The case of *Sill* vs. *Rood,*[c] which involved a similar question, maintains, that a promissory note, given on the sale of a chattel, fraudulently represented by the seller to be of great value, when, in fact, it was of no value, is without consideration and void. In neither of the cases last noticed, does there appear to have been any offer to return the article.

The case of *Miller* vs. *Smith,*[e] was an action of assumpsit for goods sold, and may be viewed as one involving a breach of warranty. The defence under the general issue, was, that the article was expressly represented to be of a different and superior quality to what it was in fact. Judge *Story* held, that in such case, the defendant may "give the facts in evidence to reduce the damages: for the plaintiff is entitled to recover no more than the real value of his goods"—that "the authorities directly support this doctrine; and there is neither reason nor justice in

straining after technical objections, to overthrow it." This case, it is true, is more applicable to questions of partial failure of consideration; but none, I presume, will question the validity of any defence against a *total failure* of consideration, when similar circumstances would constitute an available defence for a *partial failure.*

The several American decisions of this nature, have been maintained on the authority of various English decisions, of similar import, and on conceptions of their intrinsic justice and necessity.—See *Boston* vs. *Button.*[a]—*Lewis* vs. *Casgrove*[b]—*Fisher* vs. *Lamuda et al*[c]—*Farnsworth* vs. *Garrard.*[d]

[a] 7 East.480
[b] 2 Taunt.2
[c] 1 Camp.

The case of *Duncan et al.* vs. *Bell et al.,*[e] though a decision of South Carolina, where some doctrines prevail on this subject, not generally current, may be referred to as authority, on the question mainly contested in this—not to sustain the principle of implied warranties of quality or soundness, as is there maintained—but in relation to the necessity of returning the article, in order to let in the defence of failure of consideration, for fraud or false warranty. That was an action for the price of a horse, which the defendant alleged to have been unsound, and of which he died; but without any imputation of fraud. The question was, whether the failure of consideration constituted a defence to the action at law. In the decision, by Mr. Justice *Nott*, it is remarked, that the contest had arisen from a mistaken apprehension of the decisions of that court—"from confounding the action of assumpsit, on a *special promise* or undertaking, with a general *indebitatus assumpsit,* for money had and received." He also refers to cases in that court (*Fowler and Williams and Byers and*

[e] N.P.190.
[f] 1 Camp.
N.P.38.
[g] 2 Nott &
M'Cord,
153.

*1 Const. *Bostwych,*[a]) in which, he says, it was held, "that as Rep. 75. long as the contract remained open, or not rescinded; by the return of the property, or otherwise, an action for money had and received would not lie."— But, that it never has been held, in that court, "that a special assumpsit on the implied warranty might not be maintained, even though the contract had not been rescinded. The objection, (says he) in all the cases, has gone to the form of the declaration, and not to the action. This distinction, therefore, cannot exist, where the unsoundness or want of consideration is set up by way of defence. Admitting, that here, we recognise no such implied warranty; yet, according to that authority, the rule of practice is no less implacable, to express warranties of soundness—such as the present case. That court, besides former decisions in that State, relies on early cases, in the English books, in support of the principle, and which, I think, afford it sanction.

b-Doug.23    In *Weston* vs. *Downs,*[b] it was ruled, that *assumpsit* for money had and received, would not lie, when the payment had been made on a contract which was still open and not given up by the defendant: also, that the vendee had no right, in any case of *false warranty alone*, to rescind the contract, unless the right had been stipulated in the original agreement, or by subsequent consent of the vendor. Such, also, is E18Geo.3 the doctrine of *Power* vs. *Wells,*[c] and many of the old cases. The same rule has been frequently applied to the remedy, by way of defence to an action for the purchase money, and, doubtless, in many cases, without the proper discrimination, such as alluded to above. The requisition of a rescission of the contract, by a return of the article, when impracticable, and the e··-

istence of fraud in all cases, before successful defence can be made to an action for the consideration, is conceived to be totally irreconcilable, not only with justice, and the enlightened principles of modern jurisprudence, but with the whole doctrine of defence for partial failure of consideration, which is acquiring general prevalence, and, with us, has been fully recognised. I am, therefore, of opinion, that the judgment below must be affirmed: and, in this the court are unanimous.