Barnett v. Stanton & Pollard.

---

## BARNETT v. STANTON & POLLARD.

1. Where it appears that a party " was in the habit of having clothes manufactured at the North for the Mobile market," it cannot be assumed as a conclusion of law, that he was really the manufacturer, but the question should be referred to the jury for their decision.

2. Where goods are open to inspection and are actually examined before the sale, there is no implied warranty of quality, though the manufacturer himself may be the vendor.

3. In order to rescind a contract of sale, at the instance of the purchaser, an offer to return the goods, should be made in a *reasonable time* after the purchase. The non-residence of the vendor furnishes no excuse for delay, if his domicil was known, or might have been ascertained on inquiry ; and what is a *reasonable time*, is a question of fact for the jury.

THE plaintiff brought an action of assumpsit against the defendants in the Circuit Court of Mobile, on a promissory note, dated the 31st January, 1838, and payable twelve months after date, for the sum of thirteen hundred and sixty-nine and ten one-hundredths dollars. The cause was tried on the plea of *non-assumpsit.* On the trial, the plaintiff excepted to the ruling of the presiding judge. From the bill of exceptions, it appears, that the note sued on, was given with others for a lot of ready made clothing, purchased on the day of its date, by the defendants of the plaintiff.

It was shown by the evidence, that the defendants were tailors; and that the plaintiff brought the clothing to Mobile, in the spring of 1837, when he sold them to Ryder & Lowe, who being unable to comply with the terms of their purchase, the plaintiff received them back, a short time before the sale to the defendants. It was proved that the clothing was very badly cut and made up, though as usual, each piece was so marked and numbered as to designate its size; but the sizes did not correspond with the marks—the pieces being generally eight or ten inches larger than the marks indicated. And further, before the purchase was concluded, the defendants asked the plaintiff, whether the clothes were of the proper sizes; to which he replied, that " the defendants would see the sizes from the marks or tickets on the clothes." It was proved that the clothes were so badly cut, as to render them extremely unsaleable—one of the witnesses stated " they would fit no one, and were good for nothing." The defendants still had on hand a part of the stock, some of it having been sold in Mobile, and in the State of Mississippi. The clothing was intended for summer, and remained in the defendants store, until late in April next after the purchase; previous to its removal, the plaintiff left Mobile for his residence in New Jersey, and did not return until October following. A few days after the plaintiff's return to Mobile, the defendants informed him, that they had been greatly deceived in the clothing, and offered him ten per cent on the purchase, if he would take them back; but he refused to do so on any terms.

The plaintiff was not a tailor, but was in the habit of having

clothes manufactured at the North, for the Mobile market. The clothing was represented by the plaintiff to be "fresh."

The negotiation for the purchase was pending six or seven days, during which the defendants called several times at the store, where the clothing was deposited, to examine them; and although it was not shown that he did examine them, yet it was proved, that he had ample opportunity for so doing.

The plaintiff's counsel moved the Court to charge the jury, 1st. If the plaintiff made any representation to the defendants, respecting the quality or sizes of the goods, which was false, it constituted no defence; unless it was proved that the plaintiff, at the time of making such representation, knew its falsity. 2nd. That an offer to return goods under the circumstances of this case, must be made in a reasonable time after the purchase, and that such offer after a part of the goods were sold, and so late as the October following the purchase, was insufficient.

Which charges, the Court refused to give; but in answer to the first prayer, instructed the jury, that although it was true as a general rule, that a misrepresentation as to the quality of goods sold, is not a ground of defence to an action for the purchase money, unless the vendor knew of its falsity, yet the manufacturer of goods was presumed and bound to know the quality and description of articles manufactured by him, and whether the marks upon clothing indicated the quality and size of each respective article. In answer to the second prayer, the Court instructed the jury that, as the plaintiff was a non-resident, the defendants were only bound to offer to return the clothing, in a reasonable time after the plaintiff came back to the State; and that the sale of a part, before that time, did not affect the case, because the misrepresentations may not have been sooner discovered.

The jury returned a verdict for the defendants, and judgment being thereon rendered, the plaintiff has prosecuted a writ of error to this Court, and here insists that the Circuit Court erred in the instructions refused, as well as in those given to the jury.

Dunn, for the plaintiff in error.

Campbell, for the defendant.

COLLIER, C. J.—The legal questions arising upon the instructions asked for, as well as those that were given the jury, are decided by the case of Burnett v. Stanton & Pollard, (*ante*,) with the exceptions of the following. 1. Is the manufacturer of goods presumed and bound to know the description and quality of goods manufactured by him ? 2. Was the offer to return the clothing, sufficient to rescind the contract ?

1. The bill of exceptions does not explicitly state, that the plaintiff was the manufacturer of the clothing, but that he " was in the habit of having clothes manufactured at the North, for the Mobile market;" yet, in the charge to the jury, it is assumed, that the plaintiff was the manufacturer. Now, it may be true, that the plaintiff was engaged in the business of having goods made for sale, yet it will not follow, that their manufacture was under his supervision or control, or that the clothing, which was the subject-matter of the sale, was made by his order. The Court then, in assuming the fact, it is believed, invaded the prerogative of the jury—if necessary to be determined, it should have been referred to them, as a question of fact to be settled by the evidence.

We are not aware of any adjudged case, in which it has been held, that one under whose supervision, goods are manufactured, is " presumed and bound to know their quality and description," so as to charge him with a fraud in making a represensation, which happens to be untrue. It has been repeatedly said, that if one engage a mechanic to manufacture an article in his line of business, without any stipulation, the law implies the obligation, to make it in a skilful and workmanlike manner ; [Gallagher v. Waring, 9 Wend. Rep. 28 ; 18 Wend. Rep. 436. Waring v. Mason;] and under such circumstances, implies a warranty of merchantable quality by the vendor. [Laing v. Fidgeon, 6 Taunt. Rep. 108 ; Jones v. Bright, 5 Bing. Rep. 533.] Chitty in his treatise on contracts says " In the case of *manufactured* goods, ordered and supplied for a *particular purpose*, there is, it appears, an implied warranty, that they are *reasonably fit and proper for the purpose ;* although at the time of the sale, the purchaser had an opportunity of inspecting the goods."

Without undertaking to inquire, whether the manufacturer of goods impliedly warrants them to be such as are ordered by the purchaser, we are satisfied that, where they are open to inspection, and are actually examined before the sale is consummated, no warranty of quality will be implied. Principle as well as authority is directly opposed to such an idea. [Burnett v. Stanton & Pollard, (*ante.*) and cases there cited.

2. The Circuit Court should have instructed the jury that, in order to rescind the contract, the offer to return the clothing should have been made in a resonable time after the purchase. The non-residence of the plaintiff furnished no excuse for the delay, if his domicil was known, or might have been ascertained on inquiry. What was a reasonable time, was a question for the jury, under the circumstances—but in an ordinary case, one half the time, that intervened between the purchase and the offer to return, would be regarded as unreasonable. [Burnett v. Stanton & Pollard, (*ante.*)

But the offer to return could not rescind the contract; because, as the evidence shows, the defendants had continued, since their purchase, to exercise ownership over the goods, and had sold a part of them. Burnett v. Stanton & Polland, (*ante.*) The charge to the jury being the opposite of what we have declared the law to be; the judgment is reversed and the cause remanded.