## GOVERNOR, use, &c. v. POWELL, et al.

1. It is the duty of the sheriff, in good faith, to levy on a sufficiency of the property of the defendant, if to be had, as will in all reasonable probability, yield at public sale, the necessary amount of money.
2. The test to be applied, in scanning the conduct of the sheriff, when he has made an insufficient levy on land, is not the estimated cash value of such lands in the neighborhood, but the price at which such lands usually sold for at sheriff's sale.
3. When the sheriff makes a levy on land, which he afterwards ascertains to be incumbered by a mortgage, it is his duty to make a further levy, unless it is reasonable to expect, that the land so incumbered, will bring a sum sufficient to satisfy the execution in his hands.
4. Whether it is the duty of the sheriff to examine the record for incumbrances—*Quere?*

Writ of Error to the Circuit Court of Coosa.

DEBT, on sheriff's official bond, for the failure of the sheriff to make the money on an execution of the beneficial plaintiff.

The parties went to trial upon the general issue.

From a bill of exceptions found in the record, it appears, that on the 6th October, 1841, a *fieri facias* issued from the Circuit Court of Coosa county, in favor of Henry Lee against Stark Hobdy, for $141, besides costs—which came to the sheriff's hands, and was levied on the 15th October, on certain lands, and returned that the land was sold on the first Monday of March, 1842, and proceeds applied to older *fi. fa's.* Also, a levy on four slaves, on the 8th of March following, and bond taken.

The plaintiff further proved that Hobdy had in his possession, from the receipt of the execution by the sheriff, to the time of its return, slaves and other personal property to the amount of $2,500.

The defendant proved the cash value of the land levied on at the time of the levy, and sale, to be $2,640, but did not bring, at the sale, but from three to four hundred dollars. The plaintiff proposed to ask the witness, the cash value of such land, at public sale ; the court refused to permit the question to be put in this form, and the plaintiff excepted.

Defendants also proved that the day of sale was rainy, the creeks high, and not more than ten or twelve persons present, and not as many as usually attend such sales, but the sale was fairly conducted. The proceeds of the sale being exhausted by elder executions, a new levy was made on negroes, to the value of $700.

The plaintiff introduced, and offered to read in evidence, a deed of mortgage upon the lands levied on, executed by Hobdy, the 2d February, 1838, to secure the payment of upwards of $1400, which was recorded in the clerk's office of Coosa county, upon the following probate :

" I, W. D. Simpson, Notary Public, do hereby certify, that on the 3d February, 1838, Stark Hobdy personally appeared before me, and acknowledged the within instrument to be his free act and deed, given and granted for the purposes therein specified. Given under my hand and seal this 3d day of February, 1838. W. D. SIMPSON, [seal,

The defendant objected to the reading of the mortgage, because the probate was insufficient to authorize its registration, and because, if properly recorded, it was not notice to the sheriff; and the court sustained the objection. The plaintiff then offered to prove, that the sheriff had actual notice of the mortgage, which, on motion of the defendant, the court excluded, and the plaintiff excepted.

The plaintiff then read to the jury six executions, against Hobdy, for $783 47, besides costs, all of which were in the sheriff's hands at the same time with his, the five first being older than his, and the last of the same date—the proceeds of the sale of the land being appropriated to the satisfaction of those prior in date to that of the plaintiff. It was further in proof, that on the 12th January, 1842, an execution against Hobdy, from the Circuit Court of Montgomery, for $1,078, came to the sheriff's hands, which was levied on one of the slaves previously levied on, named Mingo. A witness proved the value of the slaves so levied on to be $750, and that they all belonged to him except Mingo, valued at $100. That he had hired them to Hobdy, who was his son-in-law, and were levied on whilst in his possession. That he joined Hobdy in a forthcoming bond for their delivery on the day of sale, the first Monday in April, 1842. That on the day of sale, the sheriff having died, no one was present to receive them, and they were returned to the defendant, Hobdy, who shortly after left the State, carrying them with him, and leaving no property to satisfy the execution. The slaves had been in Hobdy's possession two years previous to the levy, and the claim of the witness to the slaves was not disclosed by him to the sheriff. It was also proved, that the sheriff had paid the attorney of the plaintiff $25 on account of the execution, and promised to pay the residue at court.

The plaintiff's counsel moved the court to charge the jury, that if they believed from the evidence, that the defendant in execution had personal property in his possession, of value to the amount of $2500, during the time said *fi. fa.* was in the hands of the sheriff, which might have been levied with ordinary diligence, and that it was carried off by the defendant in execution, out of the State, a few days af-

ter the return term of said *fi. fa.*, and that the lands shown in the levy of the plaintiff's *fi. fa.* were not sold until the first Monday in March, 1842, and brought only the sum of three or four hundred dollars—and if the jury should further believe, that in consequence of the defendant in execution running off his property, the plaintiff has been prevented from making his money, then the plaintiff is entitled to recover the amount of his execution. The court refused to give this charge, in the terms asked, and charged, that to make the sheriff liable, on account of the failure of the land to bring its estimated cash value, it must appear that the plaintiff was damaged by that failure, but if the sheriff immediately after the sale of the land, levied on personal property in possession of defendant, to an amount sufficient to satisfy plaintiff's execution, although it might turn out afterwards, that said property did not belong to defendant, in consequence of which the plaintiff was damaged, the sheriff could not be made liable.

The plaintiff further moved the court to charge, that if the lands were worth, at the time of the levy and sale, $2,640 in cash and only three or four hundred dollars was bid for them, it was his duty to return the land unsold, for want of bidders, and obtain the further order of the court, and that he was guilty of negligence in not doing so, which charge the court refused, unless fraud in the sale was proved. To all which the plaintiff excepted, and which he now assigns as error.

Morris, for plaintiff in error.
W. P. Chilton, contra.

ORMOND, J.—This case has previously been before this Court. The principal question then presented, was whether the sheriff was liable to the plaintiff, if he postponed the sale of property to the last sale day, before the return term of the execution, and it should then turn out, that the property levied on did not sell for a sufficient sum to satisfy the execution. We held, he was not liable, if there was a reasonable expectation that the land levied on would, at public sale, bring a sum sufficient to satisfy the executions in his

hands, and if disappointed in this, he should in a reasonable time after, levy on other property, sufficient for that purpose.

It certainly was not our intention, by this decision, to overrule the case of Hallett v. Lee, 3 Ala. Rep. 28, where we held, that a plea by the sheriff, that he had levied a short time before the return day, and the delivery bond was returned forfeited, too late for a sale of the property upon the forfeited bond, without any sufficient excuse for the delay, was no answer to the suggestion, that the money could have been made by due diligence. The decision heretofore made in this cause, is founded upon the hypothesis, that there was a well founded expectation, that the money necessary to satisfy the plaintiff's execution, and all having a prior right, would be realized by a sale of the land levied on.

The facts of the case, as now presented, are very different from the former. It is beyond doubt the duty of the sheriff, to make the money on all the executions in his hands, by the return day if practicable; and as far as possible to insure this result, he should levy on such an amount of property as would be sufficient to meet the exigency of the writs in his hands, according to the usual and customary prices obtained at such sales.

In this case it appears, the levy was made on land encumbered by a mortgage, and the plaintiff attempted to affect the sheriff with notice of it, by showing that it was recorded. The court ruled that the probate was insufficient to authorize its registration, and also, that actual notice of the existence of the mortgage was insufficient. In both respects the court erred.

It is very obvious, that as the sheriff is answerable for an insufficient levy, when he could have made a levy on property sufficient to satisfy the execution, he must, as already stated, make an estimate of the amount the property he levies on will probably bring at public sale, and as land or other property, subject to an incumbrance, must be depreciated in value, by the amount for which it is incumbered, the incumbrance must necessarily be deducted from the estimated value of the land, and without now deciding, whether the sheriff was bound to examine the record, or affected by the constructive notice from registration, it is clear he is bound by

actual notice of its existence.   After the receipt of this no-
tice, it was his duty to make a further levy, unless it was
reasonable to expect, that the land so incumbered, would, at
sheriff's sale, bring a sum sufficient to satisfy the plaintiff's
execution, and those having a prior lien to his.   In this con-
nection, if the levy on the land, reduced in value by the in-
cumbrance unsatisfied, was insufficient to satisfy the execu-
tion of the plaintiff, and those prior to it, he would, on the
authority of Hallett v. Lee, previously cited, be guilty of
negligence in postponing the sale to so late a period, that he
could not levy again, and sell before the return day of the
writ.

The court also erred in deciding, that the probate was not
sufficient to authorize the registry of the mortgage.   The
probate, though informal, was sufficient to enable the mort-
gagee to record it.   See Bradford v. Dawson & Campbell, 2
Ala. Rep. 203, and Kissam & Co. v. Hobson, 8 Ala. R. 357,
where this question was fully discussed.

The court also erred in the test which it applied, to ascer-
tain the value of the land.   It has already been stated, that
the sheriff must make a comparative estimate, of the proba-
ble amount the property he levies on will bring, at public
sale.   This results necessarily from the fact, that he is liable
to the defendant in execution for an excessive levy, and to
the plaintiff for an insufficient one.   From the nature of the
case, no precise standard can be applied, to ascertain in ad-
vance what any particular tract of land will sell for.   There
is usually a value set upon lands of the same quality in each
neighborhood, but we cannot close our eyes to the fact, that
the estimated cash value of land is much higher than it
usually brings at a forced sale, arising from the fact, that the
sheriff must sell for the best price he can get, whilst at pri-
vate sale, the vendor may wait until he can find a purchaser
willing to give the actual value.   In order, therefore, to as-
certain the *bona fides* of the sheriff, in making the levy, the
test should have been, not the actual value of the land, but
the price at which such land usually sold for at sheriff's
sale.   Nor are we to be understood to say, that the sheriff, at
his peril, must, ascertain the price the land will bring at
the sale ; circumstances over which he can exert no control,

may temporarily affect it. What is expected from him, is, that he will in good faith levy on so much property, if to be had, as will in all reasonable probability, yield at public sale the necessary amount of money.

The remaining question, whether the sheriff is not liable to the plaintiff in execution, for selling the land at a grossly inadequate price, is one of great moment, and which at present we shall decline to examine, as it is not distinctly shown upon the record, what the actual value of the land was, as encumbered by the mortgage.

Let the judgment be reversed, and the cause remanded.