## FOSTER vs. RODGERS.

[ASSUMPSIT ON BREACH OF WARRANTY OF QUALITY OF COTTON SOLD.]

1. *Measure of damages for breach of warranty of quality.*—On a breach of warranty as to the quality of an article sold, the purchaser is entitled to recover, *at least*, the difference between its actual value and what would have been its value as warranted; but, since the jury may also allow interest on that sum, the court may properly refuse to instruct them, that that difference in value is the measure of damages.

2. *Evidence of value at time and place of sale.*—Where cotton, bought by sample in Montgomery, Alabama, in January, was shipped to New Orleans, and there re-sold at public auction in May, after notice to the vendor, the price brought at the re-sale may be looked to by the jury in determining the actual value in Montgomery at the time of the sale, when the other evidence in the cause shows the value of the sampled cotton in Montgomery at the time of sale, in New Orleans at the time of re-sale, and that the relative value of the sampled and damaged cotton was the same in both places.

APPEAL from the Circuit Court of Russell.

Tried before the Hon. ROBERT DOUGHERTY.

THIS action was brought by Thomas T. Rodgers against William Foster, in September, 1851, to recover damages for a breach of warranty in the sale of fifty-two bales of cotton. The bill of exceptions is as follows :

" On the trial of this cause, the plaintiff proved, that the defendant, on the 9th January, 1851, in the city of Montgomery, sold to him fifty-two bales of cotton, then in the warehouse of John H. Murphy in said city, for which he paid him 12⅝ cents per pound, making in the aggregate $3,624 ; that said cotton was sold and purchased by the samples, and that the samples by which it was sold indicated it to be of the quality which is usually designated by cotton-dealers as ' strictly good middling to middling fair'; and that said cotton, on the 10th February, 1851, was shipped by steamboat from Montgomery to the city of New Orleans. The plaintiff then read the depositions of several witnesses (experts), whom he had examined in said city of New Orleans under commissions, and who testified, that said cotton was received in New Orleans on the 15th February, 1851 ; that at the time of its arrival it appeared externally to be in good condition, but that shortly afterwards, on examination, it was discovered that the cotton in the middle of the bales, beyond the reach of the sampler, was wet and worthless ; and they gave it as their opinion, that it was what is commonly called ' water-packed', and must have been in a damaged condition at the time of the sale from the defendant to the plaintiff. The same witnesses testified, also, that cotton, such as the samples which the plaintiff purchased indicated that to be, was worth, in said city of New Orleans, on the 9th January, 1851, 19½ cents per pound ; on the 5th February, 1851, 12¼ cents per pound ; on the last of February, 10¼ cents per pound ; on the 10th March, 10½ to 10¼ cents per pound ; on the 2d of April, 10⅜ to 10½ cents per pound ; on the 30th April, 9½ cents per pound ; and on the 4th and 5th May, 9½ to 9⅝ cents per pound ; and that on said 5th May, 1851, said cotton was sold in said city of New Orleans, at public outcry, after one advertisement in the New Orleans papers, and brought the sum of $836. The plaintiff further proved, that the defendant, who lived in Macon county in this State, had reasonable notice of said sale in New Orleans before it took place.

" The defendant introduced evidence to the jury, conducing to prove that said cotton was not water-packed, that no water whatever was used in the packing of it, and that the damage to it occurred from other causes, and after the sale by him to

the plaintiff. He also proved that, within a very short time after he sold said cotton to the plaintiff, the price of cotton in Montgomery declined, and continued to decline gradually up to 5th May, 1851, when it was some three or four cents lower than it was on the day of the said sale. It was in proof, also, that cotton was from three-fourths to one cent per pound higher generally in New Orleans than in Montgomery. There was no proof that plaintiff bought said cotton to be shipped, or to be sold in any other market than Montgomery ; nor was there any proof of any usage in Montgomery in that particular. The testimony of the plaintiff's witnesses, so far as they testified to the price of cotton in New Orleans at the several dates stated, and as to the price for which said cotton was actually sold on the 5th May, 1851, in New Orleans, was objected to by the defendant, but was allowed to go before the jury, under an agreement and understanding between the counsel of the parties and the court, that the court should hold it subject to its ruling, and should instruct the jury as to the weight and legal effect to be given to it.

"The defendant's counsel requested the court to charge as follows :—

"1. That if the jury should find for the plaintiff, the measure of damages is the difference between the value of the cotton at Montgomery on the day of its sale by the defendant to the plaintiff, if it had conformed to the samples, and its value at the same time and place in its then damaged condition.

"2. That in ascertaining the difference in the value of the cotton on the 9th day of January, 1851, at Montgomery, had it conformed to the samples, and in its damaged condition, the jury cannot look to its value in its damaged condition in New Orleans on the 5th May, 1851.

"3. That the jury cannot look to the price for which it sold in New Orleans on the 5th May, 1851, for any purpose."

These charges the court refused, and to each refusal the defendant excepted ; and he now assigns them for error.

CLOPTON & LIGON and N. W. COOKE, for appellant :

1. The court erred in refusing the first charge asked, as to the measure of damages for the breach of a warranty in the sale of a chattel.—Marshall v. Wood, 16 Ala. 812; Kornegay

v. White, 10 *ib*. 255; Marshall v. Gantt, 15 *ib*. 686; Worthy, Brown & Co. v. Patterson, 20 *ib*. 174. The allowance of interest, in such cases, is a matter within the discretion of the jury, and the plaintiff is not entitled to it as a matter of right. As to the difference between cases in which the allowance of interest is a legal right, and cases in which it is discretionary with the jury, see McIlvaine v. Williams, 12 N. H. 475. As a general rule, interest is. not recoverable on unliquidated demands.—Sedgwick on Measure of Damages, 395; Gilpin v. Consequa, Peters' C. C. R. 85; Dox v. Dey, 3 Wend. 361. In no case has it been held, in an action for a breach of warranty, that interest was necessarily included. The charge asked, therefore, should have been given. It did not become the defendant to ask the court to instruct the jury that they might or must allow interest; but the plaintiff, if he desired any instructions on that point, should have requested them.

2. The second and third charges asked should also have been given. In ascertaining the difference in value of the goods, the time and place of the sale and warranty are to be considered, because the plaintiff is entitled to recover that amount which would make the article purchased such as it was represented to be at that time and place, and not at any subsequent time.—Shepherd v. Hampton, 3 Wheat. 200; Furlong v. Polleys, 30 Maine R. 492; Wells v. Abernathy, 5 Conn. 227; Shaw v. Nudd, 8 Pick. 13; Loder v. Allen, 2 Bibb, 338; Hanna v. Harter, 2 Arkansas R. 397; Davis v. Adams, 18 Ala. 265; Ivey v. McQueen, 17 *ib*. 408; Sedgwick on Damages, 280, 295; Comstock v. Hutchinson, 10 Barb. (S. C.) R. 213. The sale of the cotton in New Orleans, several months subsequent to the sale by defendant to plaintiff, cannot throw any light upon, or tend in any way to show, its value in Montgomery at the time of the sale and warranty. If the plaintiff could keep the cotton for four months, and then sell it for the purpose of ascertaining its value, he might keep it for twelve months, or even longer. Such evidence is too remote and uncertain, particularly to ascertain the value of an article as subject to fluctuation in price as cotton. The effect of the second and third charges asked was, to ask the court to exclude this evidence from the jury.

HILLIARD & THORINGTON, with whom was JAS. E. BELSER, *contra:*

1. The first charge asked was properly refused, for several reasons. In the first place, it does not accurately lay down the rule for the measure of damages for a breach of warranty in the sale of any kind of chattel. If given without explanation or qualification, it would not have permitted the jury to give interest on the difference in value from the day of sale to the trial; and for this reason it was properly refused. Swallow v. The State, 22 Ala. 20; Ross v. Ross, 20 *ib*. 105. Secondly, the general rule of law, which is in part stated in the charge, has no application to this case, because bales of cotton bought in Montgomery, or in any other inland town, are not to be put on the same ground with horses or negroes. The courts judicially take notice of the general customs and usages of merchants, and of the general course of trade. They will presume, therefore, that bales of cotton, bought in an inland town, are bought for shipment and sale elsewhere. As the cotton in question was actually shipped for sale at New Orleans, the measure of damages is entirely different from that hinted at, but not fully stated, in the first charge. Thirdly, in addition to the mere difference between the sound and damaged cotton, the plaintiff was entitled to recover the expenses of shipping it, or of having it examined in New Orleans, or of having it sold there.

2. As to the second and third charges, see Reese v. Beck, 24 Ala. 651; Ward v. Winston, 20 *ib*. 167. In proving the value of anything, the law allows a wide range. Opinions are admitted on such matters. The opinions of experts, as to the value of the damaged cotton in New Orleans, is evidence, however weak, which may be considered in determining its value in Montgomery.—Dixon v. Barclay, 22 Ala. 370. And the price at which it sold there, at public auction, after notice, is admissible for the same purpose.

GOLDTHWAITE, J.—There is no doubt that, on a warranty of quality, or soundness, the purchaser is generally entitled to recover the difference between the actual value of the article at the time of the sale, and the value which the article would have been worth at that time had it come up to

the warranty.—Kornegay v. White, 10 Ala. 255; Marshall v. Wood, 16 Ala. 806. But in such cases, this amount is the minimum of damages; he is entitled to this, and he may rightfully recover more. The object of the action is, to compensate the plaintiff for the injury he has sustained; and in each of the cases cited it was held, that when the rule to which we have referred applied, the jury might allow interest, and that instructions to this effect were proper. It follows necessarily from these decisions, that if the jury were legally authorized to give more than the amount which the instructions requested asserted was the measure of damages, the instructions were properly refused.

If we concede the rule insisted upon by the appellant, that the difference of value between the article sold and the article as warranted at time and place of sale is the criterion of the damages, we see no error in the refusal of the court to give the other charges requested. The evidence is, that the cotton was sold by samples on the 9th January, 1851, and it was warranted to come up to the samples. The price that it sold for in Orleans on the 5th of May, at public auction, after notice to the appellant, was certainly a circumstance tending to establish its value at that time and place; and as there was evidence of the value of the sample cotton at the same time and place, the proportion of value between the two cottons at Orleans is established. The evidence shows, also, that the relative value of the two cottons was the same in Montgomery as in Orleans, and it further shows the value of the sample cotton at the former place on the 9th January, 1851; and this being established affords the means of ascertaining the value of the other at that time and place. It was therefore proper for the jury to look to the price the cotton sold at in Orleans on the 5th May, 1851, in connection with the other evidence, in order to determine its value on the day of sale in Montgomery.

Judgment affirmed.