# WARD vs. REYNOLDS.

[ASSUMPSIT ON NOTE GIVEN FOR PURCHASE-MONEY OF SLAVE.]

1. *When witness may testify to want of knowledge.*—A want of knowledge respecting a disputed fact, by a witness who had ample opportunities of knowing that fact if it had existed, is competent evidence of its existence; and the witness may testify, in such case, to his want of knowledge.

2. *Opinion of witness as to value of slave.*—A witness may give his opinion as to the value of a slave personally known to him, although it is not shown that he possesses any peculiar skill requisite to qualify him as an expert; and the word *suppose*, when used by him in answer to a question as to the value of a slave, will be held synonymous with the expression of his opinion.

3. *Proof of value of slave at place of sale.*—Where a witness testifies to the value of a slave personally known to him at his residence in Talladega, it cannot be assumed, that the distance between his residence and the place (in Perry county) where the slave was sold was so great, and the price of slaves at the two places so different, that the evidence of the witness would shed no light on the question of value at the place of sale.

4. *When witness may testify to opinion or conclusion.*—A witness, in testifying to the value of a slave, may state that he "was considered a good hand," when the other parts of the deposition show that the witness knew the slave personally, and was expressing his own judgment, predicated on his observation, as to the qualities of the slave.

5. *Proof of market value.*—Proof of the market value of property is competent in determining its real value; and if any peculiar circumstances exist, which make the market value no criterion of the real value, they must be elicited on cross examination.

6. *Admissibility of bill of sale for slave as evidence in action on note for purchase-money.*—In an action on a note for the purchase-money of a slave, the defenses being fraud in the sale, want of consideration, and failure of consideration, the bill of sale given to the purchaser is relevant evidence for the plaintiff.

7. *Production of paper on notice.*—When a bill of sale for a slave is produced by the purchaser, on notice from his vendor, it is admissible evidence for the party calling for it, without proof of its execution.

8. *Measure of damages to purchaser for fraud and failure of consideration.*—The purchaser of a slave, when sued on the note given for the price, is entitled to reduce the recovery to the actual value of the slave, on proof that the vendor falsely represented the slave not to be addicted to running away, and that the slave, after remaining in his possession about two months, ran away without cause, and had never been regained; but he cannot, in such case, claim exemption from the payment of the entire purchase-money, as for a total failure of consideration, when it appears that he never offered to rescind the contract.

APPEAL from the Circuit Court of Perry.

Tried before the Hon. ROBERT DOUGHERTY.

THIS action was brought by Walker Reynolds, against W. W. Ward and another, and was founded on a promissory note for $800, dated the 5th April, 1847, and payable on or before the 25th December next after date. The defendants pleaded, in short by consent, *non assumpsit*, fraud, want of consideration, and failure of consideration; and issue was joined on all these pleas. It was proved on the trial, as appears from the bill of exceptions, that the note was given for the purchase-money of a slave sold by plaintiff, through an agent, to said W. W. Ward; that said agent, "both before the sale, and while negotiating the same, informed said Ward that said slave was a negro of excellent character, and recommended him in every particular, extolling him both as to character and value, and giving as the only reason why he was sold that there had been a disturbance between him and another negro;" that the slave was, prior to the sale, in the habit of running away, and was sold on that account; and that, after remaining in Ward's possession about two months after the sale, he ran away without cause, and had never been regained.

The plaintiff took the depositions of William Wilson and three other witnesses, but declined to read them on the trial; and the defendant having read them in evidence, with the exception of certain designated portions, the plaintiff then read these omitted portions. The portions of Wilson's deposition which were thus read by the plaintiff, against the defendant's objections, were his answers to the fifth, sixth, and eighth direct interrogatories, and to

the second rebutting interrogatory. The fifth direct interrogatory to this witness was, "Was the said negro man Bill, or was he not, a sound and healthy man, in mind and body?" The answer was, "*As far as I know, or have heard, he was sound in mind and body.*" The sixth direct interrogatory was, "What was the value of the said negro when you knew him?" and the answer, "*I suppose he was worth seven or eight hundred dollars in* 1847." The eight direct interrogatory was, "What was the disposition, and what the qualities of said negro?" the answer, "*I never knew or heard of said negro to resist or rebel against his owner, or any other person who had authority to control him; he was considered a good hand.*" The second rebutting interrogatory, and the answer thereto, were as follows: "Please state what Bill was worth, or would have brought, near home, or in the neighborhood where he was known as the 'Red Fox.'" *Ans.* "*I think he would have brought seven or eight hundred dollars.*" The defendant objected to the answer to the fifth interrogatory, above stated, "on the grounds (with others) that it was irrelevant, and therefore illegal," and made the same objection to the answer to the second rebutting interrogatory; but no grounds of objection were specified to the other answers. The court overruled each of the defendant's objections, and he reserved exceptions to its several rulings. It should be stated, that the witness Wilson resided in Talladega county, and had there known the slave; and that the sale to the defendant was made in Perry county.

"The plaintiff had given notice to the defendant's attorney of record, to produce on the trial the bill of sale received by defendant for said negro when he purchased him; and during the trial, the defendant himself not being present at the trial, the defendant's attorney was called on by the plaintiff's attorney for said paper. In answer to said call, defendant's attorney produced before the court a paper, of which "a copy is inserted in the bill of exceptions, and which is in the usual form of bills of sale, acknowledging the receipt of $800 "by note, in full payment for negro man Bill;" containing a warranty

in these words: "Which slave I warrant sound in every respect, titles good, and a slave for life;" and signed, "Walker Reynolds, by R. D. Rowland." "On the production of this paper, under the circumstances aforesaid, the plaintiff's attorney took the same, and offered to read it in evidence to the jury, without proof as to its execution, or any other proof about the same except as above stated. The defendant objected to the reading of said paper as evidence; but the court overruled his objection, and allowed it to be read as evidence; and the defendant excepted."

"The defendant introduced evidence, tending to show that, if the character of said slave as a runaway had been known at the time of the sale to defendant, he would not have been worth, in the market where he was sold, the price for which he was sold, by from two to four hundred dollars. It was proved, also, that the negro worked two months for the defendant in his field, and conducted himself very well during that time; but there was no evidence showing what said services were worth, or that they were worth anything, otherwise than as stated. It was conceded by the plaintiff, in open court, that a fraud had been practiced by his agent on the defendant in the sale of the slave; but plaintiff insisted, that he was entitled to recover the value of said slave, as shown on the trial, notwithstanding said fraud."

The court charged the jury, "that although it was conceded by the plaintiff, and they should find, that a fraud had been perpetrated on defendant by plaintiff's agent in the sale of the slave; and although they should find that said slave, after being in defendant's possession for two months on his plantation, had run away, and was never caught by defendant, and was thereby lost to him; still they must find a verdict for the plaintiff, for the real market value of said negro, his character and qualities considered, as proved before them by the evidence in the case."

The defendant excepted to this charge, and then requested the following charges:

"1. That if the jury believe from the evidence that a

fraud was practiced on the defendant Ward in the sale, and that Ward derived no benefit from the purchase of the negro, then the plaintiff cannot recover in this case.

"2. That if the jury believe from the evidence that a fraud was practiced on the defendant Ward in the sale of the negro, and that Ward derived no benefit from the purchase of the negro, and that he derived no benefit in consequence of the fraud practiced upon him by plaintiff's agent, then the plaintiff cannot recover in this case.

"3. That if the jury believe from the evidence that a fraud was practiced on the defendant Ward in the sale of the negro, and there was no evidence showing that Ward derived benefit from the purchase of the negro, and the evidence showed that he received no consideration for the note sued on, in consequence of the fraudulent representation of the plaintiff's agent, then the plaintiff cannot recover anything in this action.

"4. That if the jury believe from the evidence that a fraud was practiced on the defendant Ward in the sale of the negro, and that he derived no benefit from the purchase of the negro, and that he derived no benefit in consequence of his relying upon the fraudulent representations of plaintiff's agent; and further, that the negro ran away from Ward, before he had notice of the fraud practiced upon him, and he had no chance to return said negro to plaintiff or his agent, and that he did not in any way affirm or ratify the sale after the discovery of the fraud, then the plaintiff is not entitled to recover in this action.

"5. That if the jury believe from the evidence that a fraud was practiced upon the defendant Ward when said negro was sold to him, and that he wholly lost the negro in consequence of such fraud, then the plaintiff cannot recover in this action."

The court refused each one of these charges, and the defendant excepted; and he now assigns as error all the rulings of the court on the evidence, and in the instructions to the jury given or refused, to which he reserved exceptions.

I. W. GARROTT, for the appellant.

WM. M. BROOKS, *contra.*

WALKER, J.—It is contended that the answer of the witness Wilson to the fifth interrogatory was inadmissible, because, stating no fact, it rather asserts the absence of all knowledge or information by the witness of any thing opposed to the fact desired to be established. The witness had, as appears from his preceding answers, known and lived within a mile and a quarter of the slave, for fourteen years; thus having had the amplest opportunity of knowing and hearing the fact, if the slave had been unsound in body or mind. The absence of any knowledge of the fact in controversy, by one having such opportunity as this witness had of knowing the fact if it existed, is properly held admissible evidence, in the cases of Thomas v. DeGraffenreid, 17 Ala. 602, and Nelson v. Iverson, 24 Ala. 9. The former of those two decisions seems to go far enough to make the negation of all information by such witness competent evidence. It was not in that case, nor is it in this, necessary to go so far; for, if that part of the evidence which asserts that the witness never *heard* of the disputed fact is inadmissible, the court did not err, in either case, in overruling the objection, which was a general one to the entire evidence; so much of it as denied all knowledge on the part of the witness being clearly legal. It is not necessary for us to decide, and we therefore do not decide, the question of the admissibility of the absence of information by the witness. See, however, Gilbert v. Gilbert, 22 Ala. 529.

2. Three reasons are urged against the legality of the answer of this witness to the sixth interrogatory: 1st, that the *supposition* of the witness, as to the value of the slave, is not competent evidence; 2d, that it does not appear that he was competent to prove value; and, 3d, that proof of the value at another place than that where the slave was sold was inadmissible. The witness had known the slave for many years, and lived near him; and, after stating that he had so known the slave, he says, in answer to this interrogatory, "I suppose he was worth

seven or eight hundred dollars in 1847." It is evident, we think, that the word *suppose* is used by the witness in the sense of *believe*, and that the witness really gives his opinion of the slave's value. We deem the authorities sufficient to show that no peculiar skill is requisite to qualify one, who knows the property, to testify as to the value of a slave.—Rembert & Hale v. Brown, 14 Ala. 366; McCreary v. Turk, 29 Ala. 244; M. & W. P. R. R. Co. v. Varner, 19 Ala. 185; Chenault v. Walker, 14 Ala. 151; Dixon v. Barclay, 22 Ala. 370; Reese v. Gresham, 29 Ala. 91; Kellogg v. Krauser, 13 Serg. & R. 137; Governor v. Powell, 9 Ala. 83.

3. It is possible that two places may be so remote, and the markets so diverse, that the value at one place would afford no aid to the mind in determining the value at the other. But such does not appear to have been the case here. The court could not assume, that the remoteness of the place where the witness resided and knew the slave, from that where the slave was sold, was so great, and the prices at the two places so different, that the proof of value by the witness would shed no light upon the question of value at the latter place.—Foster v. Rodgers, 27 Ala. 602.

4. Separate objections were made by the appellant to each clause of the answer of the same witness to the eighth interrogatory. The objection to the first clause is in every respect similar to that made to the answer to the fifth interrogatory, which we have already considered; and, for the reasons already stated, we decide adversely to it. The second clause, if it stood alone, would not be competent evidence. It is, *prima facie*, but a statement of the repute in which the slave was held as a laborer. But, before the plaintiff offered this evidence, the defendant had introduced the sixth cross interrogatory, and the answer to it. This cross interrogatory, manifestly referring to the eighth interrogatory in chief, asks the witness, "What are the distinctive characteristics on which you predicate your opinion, given in answer to the plaintiff's interrogatory, as to Bill's character?" To which the witness replied: "*Bill, as I said, was a good hand;* and my

reason for thus saying was, that he was active, able, and willing; with this exception, that he would occasionally run away." When the answer to the eighth direct interrogatory, and the answer to the sixth cross interrogatory, are placed in juxtaposition, and considered together, it is manifest that the witness, in saying that Bill "was considered a good hand," meant that he was so considered by the witness; and that he so considered him, because he was active, able, and willing. In Royall v. McKenzie, 25 Ala. 374, the statement of a witness, that he *regarded* certain debtors as insolvent, was held admissible, because it appeared from the other portions of his testimony that his conclusion was based upon a knowledge of their circumstances. So, in this case, the competency of the testimony is shown, when it appears that the *consideration* of the witness, as to the slave being a good hand, was based upon his knowledge that the slave was active, able and willing. The judgment of the witness, predicated upon observation, that the slave was a good hand, cannot be distinguished from matter of fact; and the admissibility of such evidence is established in this State.—McCreary v. Turk, 29 Ala. R. 244; Bennett & Fail v. Patterson, 26 Ala. R. 605.

5. The testimony of the witness, in answer to the second rebutting interrogatory, that the slave would have brought seven or eight hundred dollars, was properly admitted. What property will sell for in the market is, generally, the controlling criterion in the determination of its value. Thus, we say that cotton is of the value of ten cents per pound, when it is selling at that price. It is true that incidental circumstances might, at a particular time, or in a particular locality, cause an article to bring more or less than similar property of equal value would bring. If such circumstances existed, it would always be in the power of a party to protect himself by a cross examination. Such cases constitute exceptions to the general rule, and, in our judgment, do not afford a sufficient reason for bending the rule of evidence to them. A witness has no other criterion, by which to determine the value of property; and it seems absurd that he should

be permitted to give his opinion in evidence, and yet not be allowed to state the predicate for it.

The questions as to the admissibility of the different portions of the evidence of the other witnesses, to which objections were made, are not materially different from those which we have already considered; and, indeed, no point is made upon them, different from those made upon the questions as to the admissibility of Wilson's testimony. In deciding that there is no error in the rulings of the court upon the questions of evidence already considered, we have, in effect, decided adversely to the appellant upon the remaining points of evidence. The relevancy of all the evidence objected to is clear. It all contributes to show the value of the slave, or the correctness of some of the representations made by plaintiff's agent at the time of the sale. The defendant's plea of fraud was a general one, not confined to the slave's habit of running away; and after the defendant had, under that general plea of fraud, introduced evidence of the representations, proof of the truth of those representations was clearly within the area of the controversy.

6–7. The bill of sale was clearly relevant and pertinent evidence. It was the best evidence of the price paid, which, under the decision in Marshall v. Wood, 16 Ala. 806, was admissible. The notice to produce it might have been given to the defendant's attorney; and its production by him, in obedience to the notice, would have the same effect as its production by the defendant in person.—1 Greenl. Ev. § 562. Having been produced in obedience to the notice, by the party who claimed under it, it was admissible evidence, without any proof of its execution by the party who gave the notice. Tarleton v. Goldthwaite, 23 Ala. 346; 1 Greenl. Ev. § 571. We cannot sustain the objection that the paper was not identified. The bill of exceptions recites, that the defendant was notified to produce the bill of sale given to him for the negro at the time of his purchase; and that the defendant's attorney, when called upon at the trial, produced the paper read in evidence. The defendant must be held to have admitted the identity of the bill of sale.

8. Construing the charge of the court with reference to the evidence, and observing what facts in the case are clearly established and undisputed, we find that it presents this question: To what extent is the purchaser of a slave, without a rescission of the contract, entitled to resist the payment of the note given for the purchase-money, when representations were falsely made by the seller negativing the addictedness of the slave to running away, and the slave, after remaining in the service of the purchaser for two months, escaped without any cause, save the evil disposition and habit existing before the sale, and has never been recovered. If personal property is valueless at the time of the sale, on account of its variance from the quality or character imputed to it by the fraudulent representations of the seller, the defense of the purchaser would certainly go to the entire purchase-money.—Rowland v. Shelton, 25 Ala. 217; Morehead v. Gayle, 2 Stew. & P. 224; Hogan v. Thorington, 8 Porter, 428; Worthy, Brown & Co. v. Patterson, 20 Ala. 172. Whether the property is valueless or not, the defrauded purchaser may rescind the contract. If the property is not valueless, and he does not rescind, he is entitled to the deduction of an amount equal to the difference between the value of the property on the supposition of its correspondence with the representations and its real value. These principles are so well settled in this State, that they cannot be considered open for discussion.—Marshall v. Grant, 15 Ala. 58; Marshall v. Wood, 16 Ala. 806; Willis v. Dudley, 10 Ala. 933; Kornegay v. White, 10 Ala. 255; Worthy, Brown & Co. v. Patterson, 20 Ala. 172; Rowland v. Shelton, 25 Ala. 217; Gibson v. Marquis, 29 Ala. 668; Burnett v. Stanton, 2 Ala. 181; S. C., 2 Ala. 195; Dill v. Camp, 22 Ala. 249.

The property in this case was not valueless, either upon the testimony, or the hypothesis of the charge. The only deficiency consisted in the slave's habit of running away. However much that may diminish, it does not destroy the value. It cannot be said that a slave is utterly valueless, because he has run away, or is in the habit of running away. There has been here no rescission. If the slave

26

was now regained, he would be the property of the defend-ant, and not of the plaintiff. A party desiring to rescind must, upon discovering the fraud, offer the property to the vendor within a reasonable time. The escape of the slave is doubtless a sufficient excuse for the omission to offer the property to the plaintiff, or to offer to restore the title to him.—Dill v. Camp, *supra*. To perfect the rescission of a contract, an offer to return the property, or to restore the title, is necessary nothwithstanding the escape, because the running away is neither the emancipation nor the destruction of the property. If a slave, warranted or represented sound, should die so soon after the sale as not to afford an opportunity to return or make an offer of the property, or a restoration of the title, the purchaser might be permitted to treat the contract as rescinded, without either such return, offer, or restoration.—Morehead v. Gayle, 2 Stew. & P. 224. There, a return, or offer to return, would be useless. Here, the case is manifestly different. If the slave, under the influence of his pre-existing bad habits, had absconded on the day of the purchase, good faith would require an offer of the slave back to the seller, or an offer to restore the title, before the contract could be deemed rescinded. It cannot be assumed, that a slave, who has run away for a considerable time, has got into some country, his recovery from which is impossible; and that, therefore, he is of no value. Where a slave has been sold and delivered, having no defect save the habit of running away, against which there was a warranty or representation, there is not a total failure of consideration. The property in this case was not valueless; there was no rescission, and no total failure of consideration; and the defendant was only entitled to scale the verdict down to the actual value of the slave. This was allowed by the charge of the court; and there was, therefore, no error in it.

The first four charges asked by the appellant are all based upon the hypothesis, that the slave was of no benefit to the defendant, which is expressly negatived by the statement in the bill of exceptions that the slave labored two months for him. On this account, if no other, they

were properly refused.—Carlisle v. Hill, 16 Ala. 398. We think these charges were abstract, for the additional reason, that one who has received a slave into his possession, upon a sale, cannot be said to have received no benefit by his purchase, because the slave escapes from him. He is still the repositary of the title to the slave, which is not shown to be worthless.

Conceding that the fifth charge asked by the defendant asserts a correct proposition of law, it is totally inappropriate to the case. The case here was that of *damage resulting from a fraud*, but not a *loss of property produced by a fraud*. The fraud was not the cause of the loss of the property—it was not the agency which caused the escape of the slave. The charge has no application to the case, and was properly refused on that ground, if no other.

The judgment of the court below is affirmed.

STONE, J., dissenting.