## KORNEGAY v. WHITE.

1. When there is evidence before the jury that a slave was cured, being unsound when the warranty was made, but no instructions are asked on this point of the case, the charge will be understood as declaring the general law.
2. In actions for false warranties, it is not essential the evidence should be positive, any more than in other classes of actions.
3. A warranty of soundness covers all diseases which affect the value of the thing sold, whether temporary or permanent.
4. A party may recover upon a warranty, whether he has or has not offered to cancel the contract, by returning the thing warranted.
5. In an action for the false warranty of a slave, the plaintiff is entitled to recover to the extent that the slave is impaired in value by the disease existing at the time of the warranty; and money necessarily paid to a physician in curing the disease, may be considered by the jury.
6. In estimating the damages the jury may allow interest on the sum which the plaintiff has been induced to pay, more than he should, by the false warranty.

Writ of error to the Circuit Court of Dallas.

ASSUMPSIT, by White, against Kornegay, for breach of warranty of a slave.

At the trial, the plaintiff proved the sale and warranty of the slave, as laid in the declaration, and also offered evidence tending to show that at the time of the sale, the slave was afflicted with a disease which materially impaired his value The defendant offered evidence tending to shew the slave was not then afflicted with any disease, and that if he was, the disease was not of a permanent character, and that he had since been cured. There was also evidence tending to shew that a physician attended the slave while diseased, and that his charge to the plaintiff was ten or fifteen dollars. The evidence also shewed that if the slave, in point of fact, was diseased at the time of sale, his value was affected from eight to seven hundred dollars by the disease. There was evidence tending to shew the plaintiff did not offer to return the

slave until in May, 1842, and the sale and warranty was, on the 3d August, 1841. The plaintiff did not claim a rescision of the coutract.

On this state of proof, the defendant asked for the following instructions, to-wit :

1. That the plaintiff could not recover, unless he had positively proven the slave was unsound at the time of sale.

2. That unless the slave labored under a disease of a permanent character, the plaintiff could not recover.

3. That if the jury believed the sale was made on the 3d of August, 1841, and the plaintiff discovered the unsoundness in a few weeks thereafter, but never offered to return the slave until May, 1842, then that an offer to return at that time, was not an offer to return in a reasonable time, and therefore the plaintiff was not entitled to recover.

4. That an offer to return the slave ten months after the time of discovering the disease, was not an offer to return within a reasonable time.

5. That the court, is the judge of the reasonableness of the time for the return, the facts being ascertained.

These several charges were refused, and the jury instructed—

1. That this contract was governed by the same rules as to the proof, as all other contracts ; that if the evidence so preponderated in favor of the plaintiff, as to cause the jury to believe the slave was warranted sound, and was unsound at the time of the sale, the plaintiff was entitled to recover.

2. That any disease which affected the present or future services of the slave, so as to impair his value, is, in law, unsoundness, whether the slave be speedily curable or not. To entitle the plaintiff to recover, it was not essential the disease should be permanent ; but it must be of such a nature as to impair the value of the slave, and if such was the case, and the disease existed at the time of the sale and warranty, the plaintiff was entitled to recover to the extent that the value of the slave was impaired by the disease.

3. That the jury in estimating the damages, were authorized to take into consideration the bill paid by the plaintiff to the physician for medical attention, necessary to cure the

slave, if affected with the disease at the time of the sale and warranty,

4. That they were authorised to allow the plaintiff interest on the difference between the real value of the slave at the time of the warranty, and his value, if sound, according to the warranty, from the time of sale.

The defendant excepted to the several refusals to charge as requested, as well as to those given the jury, and these matters are now assig ned as error.

G. W. GAYLE and R. SAFFOLD, for the plaintiff in error, argued,

1. It was necessary for the plaintiff to prove positively the slave was unsound at the time of sale. [Chitty on Con. 464; Eave v. Dixon, 2 Taunt. 343; 2 Esp. 673; 8 Taunt. 535; 2 Phil. Ev. 104, note 1; 2 Moore, 582.]

2. The disease must be of a permanent nature. [2 Chit. Plead, 280, note G; 21 Eng. Con. L. Rep. 397; 2 B. Monroe, 450; 3 Starkie's Ev. 1665, note 2; 2 N. & McCord, 265.]

3. The offer to return was not made within a reasonable time. [Chitty on Con. 458, 464; 9 B. & C. 259; 1 Moore, 106; Chitty on Con. 364; 2 Ala. Rep, 181.]

4. The question, whether the offer to return, was within a reasonable time is, for the court, when the facts are conceded. [Chitty on Bills, 316, note 1; 8 John. 173; 11 ib. 231; 10 Mass. 84; 1 South. 1; Chitty on Bills, 412, 509.]

5. The charge, that this contract was governed by the same rules as all other contracts, is too broad, as prior and present stipulations, are merged in the written contract.— [Cowan & Hill's Notes, 1475, 1467; ib. 561; 3 S. & Por. 329.]

6. In cases of this nature, a mere preponderance of evidence is not sufficient: the proof must be clear and positive. [2 Taunt. 343.]

7. The jury, in this action, could not take into consideration physician's bills. [Chitty on Con. 870, 876; 2 Phil. Ev. 105, n. 1; 3 Starkie's Ev. 1666, note M; 2 Leigh's Ni. Pr. 1506, note 4.]

33

8. The verdict being for the difference in value, is *in tort*, and no interest is allowable. [8 Porter, 428.]

. EDWARDS, contra, insisted,

1. That there is no distinction between a warranty and any other contract, with respect to the proof. [Lewis v. Peake, 7 Taunt. 153.]

2. No question arises upon the offer to return, as the plaintiff did not go for a rescision of the contract. [18 John. 141; 3 Starkie's Ev. 1664; 3 S. & P. 330; 2 ib. 224; 1 Hen. Bl. 17.]

3. The rule is, that a warranty is broken, if the value of the article is diminished by the defect: whether the defect is permanent or temporary only, is a matter of no consequence. [18 John. 141; 3 Stark. Ev. 1666.]

4. The physician's bills are a part of the damages, specially set out in the declaration, and the interest was properly allowable by the jury. The charge does not state that they must, but might be given. [Story on Contracts, 433, § 722, 723; 3 Wend. 356; 8 John. 348.]

GOLDTHWAITE, J.—1. We deem it unnecessary to go into a detailed examination of the several charges refused and given, as we consider the law applicable to warranties of slaves, as substantially settled by the decision of Hogan v. Thorington, 8 Porter, 428. There, the evidence shewed the slave warranted was subsequently cured, although unsound when the warranty was made. The judgment was reversed, because the court, under that state of proof, instructed the jury, the measure of damages was the difference between the real value of the slave at the time of the warranty, and what would have been its value, if sound, with interest on that difference; we then held the true measure of damages was the actual injury sustained by the purchaser, in consequence of the false warranty.

In this case, although there was evidence on the part of the defendant that the slave was cured, yet no specific instructions were asked on this point, nor do any of those actually given lead to the conclusion that the instructions were given in·connection with the fact that the slave was cured.

Kornegay v. White.

We must then understand the court as declaring the general law as applicable to warranties of slaves, and we are unable to perceive any error, either in the charges given, or in the refusal to give those which were asked.

2. In every suit for a breach of warranty, the evidence must be more or less positive; but there is no reason why it should be more so in this class of actions than in others. In Lewis v. Peake, 7 Taunt. 153, it is said questions of this kind are peculiarly fit for the consideration of a jury, and the court refused to set aside a verdict, although it was conceded the evidence preponderated against it.

3. It would scarcely be contended, we will suppose, that the small pox would not be a disease provided against by a warranty of soundness, and that is not a disease of a permanent nature. It is too clear to require illustration, that a warranty covers all diseases which affect the value of the thing warranted.

4. The bill of exceptions shows the plaintiff did not proceed upon the contract as rescinded, but as continuing, and in this view it was wholly immaterial, whether the plaintiff offered or did not offer to return the slave. The court properly refused the charges in this connection, as they had nothing to do with the case as presented.

5. The charges under which the case was submitted to the jury, conform substantially to the rules laid down in Hogan v. Thorington. So far as the slave itself was concerned, the plaintiff was entitled to recover to the extent that his value was impaired by the disease, and the jury was authorized to take into consideration the bill paid by the plaintiff to the physician for necessary medical attention induced by the disease.

6. With respect to the charge that the jury might allow interest on the difference between the real value and the purchase money, we can perceive no error. The party has the right to recover all damages resulting from the false warranty, and in estimating them interest upon the sum which the plaintiff has been induced to pay, more than he should by the false warranty, is certainly not improper to be considered by the jury. Such is the general rule in actions of trover, and

we see no reason to duubt its proper application to suits of this character.

Judgment affirmed.