## MARSHALL v. GANTT.

1. A slave was sold with warranty of soundness, and about two months afterwards, received a gun-shot wound in the arm, which tore the flesh, and shattered the bone. Mortification ensuing, the arm was amputated, and in a few days the slave died. The attending physicians, testified, that the

slave labored under a chronic affection of the lungs, which had existed previous to the sale, and but for this disease, in the opinion of the physicians, the wound would not have proved mortal, nor would amputation have been necessary. Held, that the vendor was not liable upon his warranty, although the slave was diseased at the time of the sale, beyond the extent the disease depreciated his value, had he never received the wound of which he died; and was not liable for injuries received by the slave, after the sale, which acting on the system, conjointly with the disease, hastened his death.

2. In an action upon a warranty of a slave, to recover damages for his unsoundness, it is improper to suffer the slave to be produced by the plaintiff, on the trial, and exhibited to the jury, without the consent of the defendant; and even then, it seems, the court may interpose, and refuse its assent.

Error to the Circuit Court of Dallas. Before the Hon. Nathan Cook.

THIS was an action by defendant against plaintiff in error, on a breach of warranty in the sale of six slaves. By the bill of exceptions, it appears that about two months after the purchase of the negroes, by defendant in error from plaintiff, one of them by the name of Major received a gun-shot wound in the right arm, between the elbow and shoulder, nearly the whole load passing through the arm, tearing the flesh and shattering the bone : that his attending physicians soon discovered that his lungs were seriously affected : that the wound did not heal, but finally resulted in mortification, which rendered it necessary to resort to amputation, and that in two days after his arm was amputated, he died. His physicians gave it as their opinion that his lungs were diseased at the time of the sale, and that but for that reason, he ' would have recovered from the wound. The plaintiff in error objected to the testimony in relation to the wound, but the objection was overruled by the court. The charge of the court on the above state of facts, is set out in the opinion of the court.

Testimony was introduced by defendant in error, tending to show unsoundess in another of the slaves, at the time of the sale, and in the course of the examination of the physician on the subject, the court ruled, that the witness might give his opinion of the disease of the slave, and in doing so, he might look to the history given by the slave of the case, whilst making his medical examination, so for as that

history corresponded with the symptoms, but that the history itself which the slave gave of the case was not admissible testimony : to which ruling of the court, the plaintiff in error objected.

This last slave was produced before, and exhibited to the jury, in opposition to the objection of the defendant in error, whose objection the court overruled.

The charge of the court, in respect to the slave Major, and its several rulings as to the evidence, are now assigned as error.

G. W. GAYLE, for plaintiff in error.

1. The court erred in allowing evidence to go to the jury, of a gun-shot wound subsequent to sale of Major. 1. Such evidence was irrelevant, and served only to confuse the jury. 2. It lead to a suspicion that Marshall, the defendant below, shot him, and prejudiced the jury against him.

2. Also in charging that the jury must find the whole value of the slave Major, if disease was the remote cause, and the gun-shot wound the immediate cause, of his death. 1. If the negro had not been shot, the unsoundness might not have reduced the value $50; for until shot, he was to all appearances a sound negro. 2. It departed from the rule of determining damages in such cases. See Hagan v. Thorington, 8 Porter, 428; Kornegay v. White, 10 Ala. 255.

3. The court below erred in allowing the slave Jenny to be presented to the jury, and inspected by them. 1. If such is the law, a plaintiff in such a suit can always practice a fraud upon the jury, by preparing a slave with a sickly appearance for exhibition. 2. If such a doctrine is tolerated, it will frequently lead to obscenity unbecoming a court of justice—a slave may be stripped and examined, or a horse led into court.

J. W. LAPSLEY, contra.

1. The charge as to the unsoundness of Major, and the measure of damages, was clearly right. If the unsoundness caused the death, how could it help the seller, that some accidental cause accelerated his death? The jury were required to be satisfied, from the evidence, that the death resulted

from unsoundness existing at the sale, and not from the wound. Williamson v. Cannady, 3 Iredell, 349; Cary v. Gruman, 4 Hill, 625; Story on Sales, § 354.

2. The exhibition of the woman Jenny was proper under the evidence, showing, that long before, at, and shortly after the sale, her appearance and condition were the same, as when she appeared before the jury. Indeed, it would not have been improper, without that evidence. In criminal cases, instruments with which wounds have been inflicted, and cut garments, are often exhibited to the jury. In Colt's case, in New York, a scull was brought in, and pistols fired at it, and divers experiments performed in presence of the jury. In will cases, and also in cases of nuisance, juries personally inspect the premises. I can see nothing in principle, nor find any thing in authority, opposed to such evidence; while it is supported by analogies, and reason. The evidence of the real condition of the negro, was rendered more certain and palpable, by her presence before the jury.

DARGAN, J.—The testimony conduced to show, that Major, one of the slaves warranted to be sound, about two months after the sale, received a gun-shot wound in his arm, between the elbow and his shoulder, which tore away the flesh, and shattered the bone. Physicians were called in, and the wound dressed, which was not considered dangerous: it however did not heal, and mortification ensuing, the arm was amputated. The slave died in a few days afterwards. The physicians testified, that they believed the slave labored under a chronic affection of the lungs, at the time of the wound, which had existed for some time before the injury was received, and for more than two months previous; and but for this disease, the wound would not have proved mortal, nor did they think it would have been necessary to amputate the arm. The slave, however, had been able to attend to ordinary business, previous to the wound, and it does not appear that his disease had attracted attention before that time. The court charged the jury, that if they believed, from the evidence, the slave was diseased at the time of the sale, and that the disease continued until the wound was received, which of itself was not mortal, but that the slave would have reco-

vered from the wound, but for the disease; and if they believed the real cause of his death, was the disease, although his death was accelerated by the wound, then they should find for the plaintiff, the value of the slave at the time of the sale, deducting therefrom the value of his services, from the time of the sale until his death.

In an action for the false warranty of a slave, the plaintiff is entitled to recover, to the extent the slave is impaired in value, by the disease existing at the time of the purchase. Hagan v. Thorington, 8 Porter, 428; Kornegay v. White, 10 Ala. 255. But the warranty cannot extend to diseases contracted after the sale, nor to wounds, or injuries casually received. The charge of the court, however, subjects the defendant to responsibility for the results of the wound, as well as the disease, and holds him equally liable, although the death of the slave was accelerated by the wound. In this the court erred. The defendant is liable, if the slave was diseased at the time of the sale, and warranty, *to the extent only, that this disease lessened his value,* and the court should have left it to the jury, under all the proof, to ascertain, first, whether the slave was diseased at the time of the sale, and if they found that he was, then to ascertain to what extent this disease depreciated the value of the slave, had he never received the wound. This is the extent of the defendant's liability, because his warranty extends no further. He does not undertake to be responsible, if his death is accelerated by wounds, or other diseases, contracted after the sale; but it is limited to the diseases existing at the time of the sale, and the measure of this liability, is, to the extent that the slave was deteriorated in value by the disease. He cannot be held liable, for injuries received afterwards, which, acting on the system, conjointly with the disease, hastens his death.

This is the only error we can discover, in the record. The ruling of the court, in reference to the other slaves, alleged to be unsound, was correct; nor can we say, there was any error in regard to the testimony. We will however remark, that the practice of producing the slave before the jury, should not be encouraged. A jury, who are not supposed to be medical men, nor acquainted with the nature, and charac-

ter of disease, may often be misled, by the appearance of the slave. The impropriety of it is still more apparent, by reflecting, that the defendant has not the power to compel the plaintiff to bring the slave before the jury. If his appearance would make in favor of the defendant, the plaintiff may not let him appear before them. If, however, the plaintiff should think the presence of the slave would be favorable to him, he can bring him into court for this purpose. We think it the safer practice, not to permit the slave to appear in court, and be exhibited to the jury, unless both parties assent to it, and then, even, the court may refuse to permit it to be done. This is the first time the question has ever been raised in this court, or in any other, that I can discover. We do not see that the defendant was injured by it, in this particular case. But the practice may lead to injurious results, to the rights of defendants, and it should not be allowed to spring up. For the error we have noticed, the judgment must be reversed, and the cause remanded.