## HOWARD *vs.* COLEMAN.

[ACTION BY OWNER, AGAINST HIRER OF SLAVE, FOR NEGLIGENCE.]

1. *Indefinite objection to deposition.*—A motion to suppress a deposition, " because the witness did not answer material portions of the 3d, 4th, and 5th cross-interrogatories", is too general and indefinite.

2. *Relevancy of evidence rebutting negligence in treatment of hired slave.* In an action by the owner, against the hirer of a slave, to recover damages for the defendant's negligence and want of care in failing to furnish proper medical attendance to the slave while sick; it having been proved that, by the terms of the contract of hiring, plaintiff's agent, by whom the contract was made, assumed to pay for necessary medical services during the term, and had authority to make such contract,—evidence showing that the defendant informed the agent of the slave's sickness, and requested him to call in a physician, and that the agent refused to do so, and declared

Howard v. Coleman.

himself satisfied with the defendant's personal attendance on the slave, is relevant and admissible for the defendant.

[2.] *Proof of agency.*—It having been proved that the husband was absent from the place of his residence during the greater part of the time while a hired slave was sick at his house, and, when not absent from the place, was at home only at night; and that his wife had the management and nursing of the slave throughout his sickness,—this is sufficient proof of the wife's authority to act as agent of the husband, in reference to the slave, to authorize her to send a message to the owner, informing him of the slave's sickness, and requesting him, in accordance with the terms of the contract of hiring, to call in a physician.

3. *Relevancy of evidence rebutting negligence in treatment of hired slave.* In such action, the plaintiff having proved that the slave died of an infectious disease, contracted at the defendant's house during the term; and having introduced evidence tending to show that the defendant was unnecessarily absent from home during the slave's sickness, and neglected to give him proper care and attention while sick,—it is competent for the defendant to prove, in rebuttal, that the business in which he was engaged required his absence from home; that the nature of his business was known to the plaintiff when the contract of hiring was made, and that he contracted the disease of which the slave died while thus absent, from home on business.

[3.] *What is revisable.*—In civil causes, the appellate court will not notice any assignment of error which is not insisted on in the argument of the appellant's counsel.

4. *Proof of agency.*—if a mother makes a contract, in the presence of her unmarried daughter, and without objection on her part, for the hiring of a slave belonging to the daughter, this is sufficient, if unexplained by other evidence, to raise a legal presumption of the mother's authority to make the contract as agent of her daughter.

APPEAL from the Circuit Court of Dallas.
Tried before the Hon. NAT. COOK.

THIS action was brought by Miss Mary E. Howard, against Allen W. Coleman, to recover damages for the loss of a slave, named George, who was hired by plaintiff to defendant, for and during the year 1857, and who died of small-pox while in the defendant's possession during the term. The complaint contained two counts; the first alleging, that the defendant carelessly and negligently exposed the slave to small-pox, whereby he contracted the disease, from which he died; and the second, that he failed and neglected to provide proper and neces-

sary medical aid and attendance for the slave while sick. The material facts of the case, as disclosed by the evidence adduced on the trial, (all of which is set out in the bill of exceptions,) are these: The contract for the hire of the slave was made between the defendant and Mrs. Martha E. Howard, who was the plaintiff's mother; the plaintiff herself, to whom the slave belonged, being present at the time, but saying nothing. By the terms of the contract, the defendant agreed to pay one hundred dollars for the hire of the slave; "and Mrs. Howard agreed to pay the doctors' bills, if the slave was sick, during the year." Mrs. Howard and her daughter resided in the village of Richmond in said county, where the defendant had a store, though his residence was four miles distant in the country. In the spring of 1857, while in the northern cities buying goods, the defendant contracted the small-pox; but the disease did not manifest itself until after his return home. Before he recovered, his wife and two of his servants were also taken sick with the same disease; and it was afterwards communicated to the slave George, who, after two weeks illness, died. The plaintiff introduced evidence showing that the defendant failed to call in a physician to the slave, and other evidence tending to show that he was unnecessarily absent from home during the slave's sickness, and neglected to furnish him with proper medicines, nursing, &c.; while the defendant offered evidence conducing to prove that the slave received the same care and attention with the members of his own family.

Before entering on the trial, the plaintiff moved to suppress the deposition of J. E. Todd, (which had been taken by the defendant,) "on the ground that said witness did not answer material portions of the 3d, 4th, and 5th cross-interrogatories." This witness was the father of the defendant's wife, and testified to the condition of the defendant's family during the prevalence of the small-pox, the alarm occasioned by it in the neighborhood, the difficulty of procuring a physician, the precautions adopted to prevent the disease from spreading, the manner in which the sick persons at the defendant's were nursed

and attended, &c.; and his answer to the 4th interroga-
tory was in these words: "As soon as it was ascertained
that George had the small-pox, Mrs. Coleman (defend-
ant's wife) sent for me, and requested me to go and see
Mrs. Howard, and ask if she would not have a physician
sent to visit George. When I delivered the message to
Mrs. Howard, she told me that, as Mrs. Coleman had
treated Mr. Coleman and his slaves who had the disease,
she was fully satisfied and willing for her to continue to
treat and manage George's case, as she had her own, all
of whom had recovered; that she did not wish to have a
physician sent for, and that she would be satisfied for
George to be under Mrs. Coleman's treatment." The
plaintiff objected to this answer, and moved the court to
suppress it, "on the ground that it was illegal and irrele-
vant, and because there was no proof that the said message
from Mrs. Coleman was sent by the defendant's authority,
command, or consent." The court overruled each of these
motions, and the plaintiff excepted.

The plaintiff read in evidence the deposition of her
mother, Mrs. Martha E. Howard, who testified to the
terms of the contract of hiring, and to several circum-
stances tending to show negligence and carelessness on
the part of the defendant in the treatment of the slave
while sick; and the defendant read in evidence the depo-
sition of his daughter, Miss Martha C. Coleman, whose
testimony tended to show that the slave received all need-
ful care and attention. Several exceptions were reserved
by the plaintiff to the rulings of the court on the admis-
sibility of different portions of these depositions, which,
however, require no particular notice. "The defendant
asked a witness, how long he (defendant) had been mer-
chandizing in Richmond? whether he went east to pur-
chase goods? and how long he had been making such
trips? The plaintiff objected to *this question*, as illegal
and irrelevant; but the court overruled the objection,
and allowed the witness to answer; and the witness said,
that he had been merchandizing there for some two years;
to which the plaintiff excepted."

"This being all the evidence, the plaintiff asked the court, in writing, to charge the jury as follows:

" '1. Upon the hiring of a slave, if there is an agreement for the *hirer* (?) to pay the doctors' bills, and this is the only stipulation, except the agreement for hiring, the law devolves the duty on the person hiring the slave, if he gets sick, and needs a physician, to call one in; and if he fails to do so, and thereby the slave is lost, the person hiring is responsible.'

" '2. The agreement to pay the doctors' bills, if there was no other special term of the contract, excludes any other; and if there was any such agreement, and there was a hiring of the slave by the defendant, then the law devolved upon him the duty, if the slave got sick, to give him such attention as a man of reasonable care and prudence would give to his property; and if the defendant failed to give such attention, and loss ensued, he is responsible'.

" '3. If the negro was sick, and refused to take medicine, it was not the duty of the plaintiff, or her mother, to send some one to make him take the medicine, but it was the defendant's duty to exercise his authority to make him take medicine; and if he did not do so, and a man of reasonable care and prudence would have done so, and loss resulted from it, then plaintiff is entitled to recover.'

" '4. Upon a contract by the *hirer* (?) of a slave to pay for doctors' bills, the hirer is bound, and has a right, to send for a physician when the slave is sick; and if the hirer fails to send a physician, and loss results from it by the death of the slave, the hirer is liable for the loss'. "

The court gave each of these charges, but with the following qualification: "If the jury believe from the evidence that the defendant hired the slave from Mrs. Howard, in the presence of the plaintiff, and without objection from the plaintiff, and it was then agreed that Mrs. Howard should pay the doctors' bills for the slave; and if Mrs. Howard was in due time notified of the sickness of the slave, and was asked to procure medical aid for him, and declined to do so, and requested that the slave should be left under the care and prescription of the defendant's

wife; and if the slave was so left under the care and pre-
scription of the defendant's wife, and the defendant and
his wife rendered due care and attention to the slave during
his sickness,—then the defendant is not liable in damages
to the plaintiff for the loss of the slave"; to which quali-
fication the plaintiff excepted.

All the rulings of the court to which exceptions were
reserved, are now assigned as error.

ALEX. & JNO. WHITE, for appellant.

BYRD & MORGAN, contra.

R. W. WALKER, J.—1. The court did not err in over-
ruling the plaintiff's motion to suppress the deposition
of J. E. Todd. The ground assigned for the motion was,
that the witness "did not answer material portions of the
3d, 4th, and 5th cross-interrogatories." The objection
was too general. The plaintiff should have specified what
portions of the cross-interrogatories referred to the wit-
ness had failed to answer.

2. On comparing the objections made by the plaintiff
to certain portions of the testimony of the witness Todd
with the deposition of the witness as set out in the record,
it is obvious that, either in transcribing the bill of excep-
tions, or in the bill of exceptions itself, the objections
have by mistake been applied to the answers to the 3d,
instead of the 4th interrogatory. Accordingly, we shall
consider the objections as referring to the answers to the
4th interrogatory. The evidence conduced to show, that
Mrs. Howard was the agent of her daughter to hire the
slave, and was authorized to control the medical attend-
ance which might be needed by the slave while in the de-
fendant's possession. On the supposition that Mrs. How-
ard was such agent, and had such authority, evidence
showing that the defendant had sent her a message, in-
forming her of the sickness of the slave, and requesting
her to send a physician, and of her response to such mes-
sage, would have been competent testimony for the defend-
ant. The message detailed by the witness was, however,
sent by Mrs. Coleman, not by her husband; nor was he

Howard v. Coleman.

present at the time. But it appears that the evidence which the plaintiff had offered tended to show that the defendant was absent from home during a considerable portion of the time of George's sickness; that when not absent, he was at home only at night; and that Mrs. Coleman had the management and nursing of George throughout his sickness. These facts certainly tended to establish that Mrs. Coleman was so far authorized to act for her husband in reference to the slave, as to send to Mrs. Howard the message alluded to.—See 1 Parsons Contr. 287–8, note (*b*.) We think, therefore, that there was no error in refusing to exclude from the jury the evidence in relation to that message, and the answer thereto which was sent by Mrs. Howard.

3. The obvious purpose of some of the testimony introduced by the plaintiff, was to show that the defendant was unnecessarily absent from home, and neglected the slave during his sickness. To rebut this evidence, it was competent for the defendant to prove that he was engaged in business which required him to be thus absent. In this view, the question put to one of the witnesses, as to defendant's being engaged in merchandising in Richmond, might, perhaps, be considered as at least not plainly irrelevant. Moreover, there was no error in permitting the defendant to prove the circumstances under which the small-pox had been introduced into his family. Such evidence might be important, for the purpose of rebutting the idea that the slave had contracted the disease through any fault or neglect on the part of the defendant. With the view of explaining how it was that he had brought the disease into his family, and in connection with the fact that he contracted it while on a visit to New York, it was not improper for the defendant to show that he had been for some time engaged in business which frequently rendered it necessary for him to make such trips to the northern cities. The force of such testimony would be strengthened by showing that the defendant's habit in this particular was known to Mrs. Howard when she hired him the negro; and the jury might, perhaps, infer such knowledge from the fact that the defendant was merchan-

dising in the village in which Mrs. Howard and her daughter resided.

Other exceptions were taken to the rulings of the circuit court, in relation to the evidence; but they are not insisted on in the argument of the counsel for the appellant, and, according to the well settled practice of this court, we do not notice them.

4. The court gave the charge which was asked by the plaintiff, but added a qualification, which was obviously based on the idea, that if the defendant hired the negro from Mrs. Howard, in the presence of, and without objection from her daughter; and it was agreed, as part of the contract, that Mrs. Howard should pay the doctors' bills for the slave, this was, if unexplained by other facts, sufficient to bind the daughter to the contract thus made, and to create the presumption that Mrs. Howard was authorized to control the medical attendance which might be needed by the slave during the term of hiring. We think that would be the legal effect of the facts supposed in the charge of the court. The charge must be construed in connection with the evidence; and it does not appear that there was any evidence to rebut or explain the legal presumption which, as we have just declared, arises from the facts referred to. This being the case, we see no legal objection to the charge which the court gave.

Judgment affirmed.