## LEWIS vs. PAULL, ET AL.

[ACTION FOR DAMAGES FOR THE WRONGFUL AND VEXATIOUS SUING OUT OF AN ATTACHMENT.]

1. *Special damages; when must be averred.*—A complaint in a suit for damages for the wrongful and vexatious suing out of an attachment, must aver special damages, in order to authorize proof, and a recovery of such special damages.
2. *Bill of exceptions taken most strongly against party excepting.*—A bill of exceptions is taken most strongly against the party excepting, and it devolves on him to show error affirmatively, and to do so, he must state the point sought to be revised with clearness and precision, and leave nothing to surmise and conjecture.
3. *Error without injury, in admission of illegal evidence.*—Where a clause in a witness' deposition is objected to, and it is in substance but a repetition of what had been previously testified to by the same witness, and does not exert a wider or greater influence than the former unobjectionable testimony had done, the introduction of such testimony is, at most, error without injury.

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. ROBERT DOUGHERTY.

THIS action was brought by the appellant against the appellees; was commenced on the 4th March, 1859, and sought to recover damages for the breach of the conditions of a bond. The complaint was as follows: "Plaintiff claims of defendants $——, for the breach of the condi-

tion of a bond made by them on the —— day of ——, payable to plaintiff in the sum of $——, with condition that, whereas John H. Paull, had on said date, prayed an attachment against the estate of the plaintiff, in this action for the sum of $——, and obtained the same, returnable to the spring term of the circuit court: Now, if the said John H. Paull should prosecute his said attachment to effect, and pay the defendant therein all such costs and damages as he might sustain by reason of the wrongful or vexatious suing out such attachment, then said obligation to be void, otherwise to remain in full force and effect ; and the plaintiff, James R. Lewis, says the condition of said bond has been broken by defendants, in that said attachment was wrongfully and vexatiously sued out, and that said James R. Lewis was not about fraudulently to dispose of his property, to the damage of plaintiff as above stated."

Judgment was rendered on the 27th November, 1866, for the plaintiff, for one dollar damages and costs.. The questions raised on the depositions of the witnesses, Fish and Gindrat, will sufficiently appear from the opinion of the court.

RICE, SEMPLE AND GOLDTHWAITE; CHILTON, THORINGTON AND CHILTON, for appellants.

WATTS & TROY, contra.

NOTE BY THE REPORTER.—The first of the three following opinions was delivered at the June term, 1867. An application having been made by the appellant's counsel for a rehearing, the second opinion was delivered on granting the application, and the third, at the January term, 1868, after the cause had been again argued and submitted for a decision.

BYRD, J., (June 12, 1867.)—1. It appears from the record that "the parties agreed that any and every plea in bar which could be legally pleaded without being verified by affidavit, should be deemed and taken as filed, and that all proper replications and issues thereon should be deemed

and taken as filed, and that all proper issues touching the merits, should be deemed and taken as formed," and that "on the issues thus formed, the cause was submitted to a jury for trial." Although it may be competent for the court below to proceed to trial upon such a state of pleading, yet we are not aware of any rule of practice or provision of the Code which authorizes it. *Articles 3d and 4th of chap. 8, title 1, part 3, of the Code,* do not authorize issues to be made in such general terms. The practice of *pleading in short by consent,* has been tolerated in this State, but not without stating the nature of the plea or replication, or the substance thereof. It does not seem to us that the court can be called upon by such an agreement as is set out in this case, to determine what pleas "in bar can be legally pleaded," and the proper replications thereto and issues thereon, in order to ascertain what evidence was properly admissible or excluded. But without further intimating any opinion upon this question, or upon the effect that this court will give to such an agreement, we will proceed to dispose of the questions raised upon the deposition of the witness Fitch, upon another ground.

The complaint in this case makes no averment of special damages. The deposition of Fitch tends to prove such damages. If it is necessary to prove such damages in order to authorize proof and a recovery of them, then the court properly excluded the deposition and each sentence thereof, so far as the question of special damages resulting from a loss of credit with particular persons is concerned.

In an action on a warranty of the soundess of a slave, it has frequently been held by this court that the plaintiff may prove and recover medical bills and other necessary expenditures incurred in curing the disease under which the slave was suffering at the date of the warranty, without making any averment of special damages.— *Hogan v. Thorington,* 8 Por. 428 ; *Kornegan v. White,* 10 Ala. 255 ; *Willis v. Dudley,* ib., 933 ; *Marshall v. Wood,* 16 ib., 807 ; *Worthy v. Patterson,* ib. 172.

All these decisions were made before the adoption of the Code. It was unnecessary, therefore, in the case of *Roberts v. Flemming,* 31 Ala. 683, to have decided that, since the adop-

Lewis v. Paull et al.

tion of the Code such damages might be recovered without an averment of special damages; and I do not think, therefore, that this decision settles the question mooted in this case. I see nothing in the Code which dispenses with the averment of special breaches or special damages, whenever they were necessary to be averred at common law, in order to entitle a party to recover.

In the case of *Donnell v. Jones*, 13 Ala. 500, this court says, "the declaration is good without the averment of special damage, as the law implies nominal damages from the act complained of, but this does not authorize proof of special damage, and it is clear that no averment of particular damage resulting from the loss of reputation, credit or business, or of the withdrawal of particular customers, is contained in it, so that all proof of such loss, if properly objected to, was improperly received in the court below." This decision has never been overruled, nor are we advised that its correctness has ever been questioned by this court. And so far as the deposition of Fitch tended to prove such damages as could only have been recovered under an averment of special damages, we hold that the court below did not err in its rulings on the admissibility of that deposition.

The case of *Smith v. Gafford*, 33 Ala. 172; *Gundy v. Humphries*, 35 ib. 626, which were actions commenced after the adoption of the Code, confirm the view which we have taken. Where averments of special damages were necessary to entitle a party to recover for such damages at common law, such averments are still necessary. The form of a complaint for slander on page 554 of the Code, is in substance the same as a declaration at common law, with an averment of general damages; and no form is given in the Code with an averment of special damages. These cases must therefore be taken as settling the question under discussion, and as overruling the intimation contained in the opinion of the court in the case of *Roberts v. Flemming, supra*.

2. As to that portion of the testimony of Gindrat, objected to on the trial in the court below, and which was admitted by the court, we will observe that the record in-

forms us that the plaintiff "only stated the grounds of his objection to the introduction of said words herein above quoted from said answer of Gindrat to the 5th direct interrogatory, which statement of grounds of objection included every ground which could be legally stated." It therefore appears that the court below was duly informed of all the grounds of objection to the introduction of the words quoted, but the record fails to inform us what those objections were, except in the general terms that they "included every ground which could be legally stated."

Upon the reasoning herein addressed to the pleadings, as well as upon the generality and indefiniteness of the objections shown upon the record, we must hold that there is no error apparent to us in the ruling of the court below upon this question. A bill of exceptions is taken most strongly against the party excepting, and it devolves on him to show error affirmatively. To do so, he must state the point sought to be revised with clearness and precision, and leave nothing to surmise and conjecture.

This court will and should invoke every reasonable intendment in support of the correctness of the action of the inferior court. This court is not disposed to encourage such generality in pleadings and objections as has been resorted to in this case.

It results that the judgment of the circuit court must be affirmed.

JUDGE, J., not sitting.

BYRD, J., (July 17, 1867.)—I am satisfied with the correctness of the opinion heretofore delivered in this case, as far as it goes. But appellants' counsel, in the application for a rehearing, insist on a point not noticed on the brief, which was filed with the record, and therefore it was not passed upon by the court in that opinion ; such has long been the practice of the court.—19 Ala. 321 ; 21 ib. 317, 654 ; 23 ib. 420 ; 25 ib. 514 ; *Howard v. Coleman*, 36 Ala. 721. That point is, that the motion to suppress that portion of Gindrat's testimony in these words : "I understand that his idea was to use his goods in business there," was overruled by the court below and excepted to. This exception

was not noticed in the opinion for the reason above assigned.

It is now pressed with a view to obtain a rehearing; and in the peculiar condition of this case, I am disposed to consider it with reference to such a view.

It has often been held by this court that the admission of illegal testimony, which clearly worked no injury to the party objecting to its introduction, is not a reversible error.

The evidence of Gindrat, in my opinion, clearly shows that the understanding of the witness as to the idea of the appellant in going west "to use his goods in business there," was correct, and was established as proven by the witness. Those declarations are contained in the following parts of Gindrat's testimony: In answer to the third interrogatory, he says, "In January, 1859, I had conversations with Mr. Lewis, the plaintiff, in which he informed me of his intention to remove with all his effects to the west. * * * He said he thought he could improve his business prospects by going west"; and in his answer to the 5th interrogatory, he says : "He frequently spoke to me about his desire to go west. He spoke of improving his business prospects by going west, and *I understood that his idea was to use his goods in business there.*" In his answer to the 7th interrogatory, the witness says : "In January, 1859, all these matters of the removal of Mr. Lewis, with the stock of goods to the west, and his indebtedness to Mr. Paull, were freely spoken of between the parties and myself."

It is evident to my mind, that the understanding of the witness as to the idea of appellant, was clearly proven by his declarations above set out, and was at least the one which a reasonable mind would naturally infer from that evidence, and was, at most, cumulative and redundant evidence of an *inferior character*, to that which proved the matter expressed in the evidence objected to. And, although, it was error in the court to admit that portion of the evidence which was reached by the motion to suppress, and which motion should, therefore, have been allowed; yet, it is evident to me, as before stated, that no injury resulted from the action of the court below to the appellant, in refusing to suppress that evidence. I conceive that the

following decisions of this court fully sustain this view. Shep. Dig. p. 568, § 82 ; *Garrett v. Rhea,* 9 Ala. 234, 3 Stew. 185 ; *Parsons v. Boyd,* 20 ib. 112 ; *Lewis v. Boynton,* ib. 383 ; *Seaberry v. Doe, &c.,* 22 ib. 217 ; *Kyle v. Mays,* 22 ib. 692 ; *Frierson v. Frierson,* 21 Ala. 549 ; *Hughes v. Hughes,* 31 Ala. 519 ; *Thompson v. Drake,* 32 ib. 99 ; *Bishop v. Blair,* 36 ib. 80 ; *Jemison v. Smith,* 37 ib. 185 ; *Jemison & Sloan v. Dearing,* at present term. Such is the result of the decisions of this court, though I think it would have been better to have adhered to the rule laid down by Mr. Greenleaf and other writers, which is, that the admission of illegal evidence against the objection of the party excepting, is a reversible error, unless the court afterwards rules it out, or instructs the jury to disregard it.

In this case the appellant recovered a judgment in the court below. The evidence of Gindrat objected to, if of any value against the appellant, went to the foundation of the action, and not to the question of the *quantum* of damages—and as he sustained his action by the recovery of a judgment, it seems to me that this is another reason which shows that no injury has resulted to him from the introduction of the evidence.

I see no reason, therefore, upon which to ground an order for a rehearing in this cause.

But the chief-justice not agreeing with me in the views expressed, nor in the construction of the evidence and bill of exceptions, and being of opinion that a rehearing should be granted, and as we alone can sit upon this application, I yield my assent to a rehearing, as on another trial, if we then differ, another judge, under a late statute, *may* be summoned to sit with us in the final decision of the cause. But, on the constitutionality of the statute which authorizes the calling of another judge in such a contingency, I think it premature to express an opinion, as it has not been argued.

Rehearing granted, to be argued at the next term.

BYRD, J., (March 30th, 1868.)—1. In the case of *Donnell v. Jones,* 13 and 17 Ala. Reps., there was an averment in the declaration of a loss of reputation and credit as mer-

Lewis v. Paull et al.

chants. No such allegation is contained in the complaint in this case. In that case it was held that the loss of credit with particular persons was not recoverable under an averment of a general loss of mercantile reputation and credit. I do not think, under a complaint like this, that a party can recover damages for a general or special loss of credit. All the reasons employed in that case why a special loss of credit could not be introduced in evidence, are applicable to this case, and also are equally valid against a recovery for damages for a general loss of credit, which are not assigned as a breach of the bond. Can a defendant be advised of, or prepared to meet with proof, all consequential damages which may flow from the wrongful and vexatious suing out of an attachment, without an averment that they are claimed? Under a general breach of such a bond, the plaintiff can recover all damages which result to him from any injury done to the property levied upon, and also vindictive damages if it was sued out maliciously. But damages resulting from a loss of credit, are recoverable when averred and proven, not as vindictive damages, but as those resulting from the wrongful suing out the attachment. And in order to recover for them, they must be averred in the complaint and proven. The right merely to vindictive damages, does not authorize a party to recover for loss of credit, unless averred and proven. I can not, therefore, make any distinction as to the necessity of averring loss of special credit and general credit. Both, as to this point, must stand on the same ground and principle. And such we conceive to be the result of the doctrine clearly announced in the case of *Donnell v. Jones*, 13 Ala. 500; see also, *Smith v. Gaffard*, 33 ib. 172; *Gandy v. Humphries*, 35 ib. 626.

2. The witness, Gindrat, in his deposition, made the following statements: "In January, 1859, I had conversations with Mr. Lewis, the plaintiff, in which he informed me of his intention to remove with all his effects to the west, * * * * and I informed Mr. Powell at the time of Mr. Lewis' intention. * * * * He said he thought he could improve his business prospects by going west. * * * * He frequently spoke to me about his desire to go west. He

spoke of improving his business prospects by going west, *and I understood that his idea was to use his goods in business there.* I did inform Mr. Powell, the defendant, of these conversations with Lewis, and of Lewis' intention to go west." The question for our determination in this connection is, did the court commit a reversible error in refusing to suppress the clause of the deposition which we have italicised. There are probably no two words in our language which, in common conversation, are employed with less precision than the words *understood* and *idea.* The word *idea* is frequently used as a substitute for the word intention, and when speaking of the avowed purpose or intention of a third person, careless talkers frequently employ the phrase *his idea.* So, of the word *understood.* Witnesses frequently employ this word when they obviously intend thereby to express their recollection of what had been said. "I understood," that is my recollection of what he said, not the precise words of the speaker, but the substance of them, as recollected by the witness. We think that the witness meant, and that the jury understood him to mean, "my recollection of what he said is, that he intended to go west and use his goods in business there." This witness had testified so fully in another place, to the statement made by Mr. Lewis, that the jury, if they credited the witness and his recollection, could not fail to arrive at the conclusion that Lewis had expressed his intention of going west and employing his goods or effects in business there, even if the sentence objected to had been suppressed. The clause, then, which was objected to, was, in substance, but a repetition of what had been previously testified to by the same witness; could not have exerted a wider or greater influence than the former unobjectionable testimony had done, and we have no hesitation in affirming that if there was error in receiving this testimony, it was error without injury. Hence the judgment of the circuit court must be affirmed.